ACCEPTED
03-15-00077-CV
4469224
THIRD COURT OF APPEALS
AUSTIN, TEXAS
3/12/2015 9:56:12 AM
JEFFREY D. KYLE
CLERK

## No. 03-15-00077-CV

### IN THE THIRD COURT OF APPEALS
### AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

3/12/2015 9:56:12 AM

JEFFREY D. KYLE
Clerk

### GREGORY JOE WICKLINE,
*Appellant,*

**V.**

### BOARD OF REGENTS FOR THE OKLAHOMA AGRICULTURAL AND MECHANICAL COLLEGES, ACTING FOR AND ON BEHALF OF OKLAHOMA STATE UNIVERSITY; AND JAMES MICHAEL HOLDER, IN HIS INDIVIDUAL CAPACITY AND IN HIS CAPACITY AS VICE PRESIDENT FOR ATHLETIC PROGRAMS AND DIRECTOR OF INTERCOLLEGIATE ATHLETICS FOR OKLAHOMA STATE UNIVERSITY,
*Appellees.*

Appeal from the 98th District Court of Travis County, Texas,
Trial Court Case No. D-1-GN-14-004391

# BRIEF OF APPELLANT

**BECK REDDEN LLP**
    Karson K. Thompson
    State Bar No. 24083966
    kthompson@beckredden.com
    Christopher Cowan
    State Bar No. 24084975
    ccowan@beckredden.com
515 Congress Avenue, Suite 1750
Austin, TX 78701
(512) 708-1000
(512) 708-1002 (Fax)

**BECK REDDEN LLP**
    David J. Beck
    State Bar No. 00000070
    dbeck@beckredden.com
1221 McKinney, Suite 4500
Houston, TX 77010
(713) 951-3700
(713) 951-3720 (Fax)

**COUNSEL FOR APPELLANT, GREGORY JOE WICKLINE**

## IDENTITY OF PARTIES AND COUNSEL

**Appellant:**                    Gregory Joe Wickline

**Counsel for Appellant:**        David J. Beck
                                  State Bar No. 00000070
                                  dbeck@beckredden.com
                                  BECK REDDEN LLP
                                  1221 McKinney, Suite 4500
                                  Houston, TX 77010
                                  (713) 951-3700
                                  (713) 951-3720 (Fax)

                                  Karson K. Thompson
                                  State Bar No. 24083966
                                  kthompson@beckredden.com
                                  Christopher Cowan
                                  State Bar No. 24084975
                                  ccowan@beckredden.com
                                  BECK REDDEN LLP
                                  515 Congress Avenue, Suite 1750
                                  Austin, TX 78701
                                  (512) 708-1000
                                  (512) 708-1002 (Fax)

**Appellees:**                    Board of Regents for the Oklahoma
                                  Agricultural and Mechanical Colleges, and
                                  James Michael Holder

**Counsel for Appellees:**        Sean Breen
                                  State Bar No. 00783715
                                  sbreen@howreybreen.com
                                  Randy Howry
                                  State Bar No. 10121690
                                  rhowry@howrybreen.com
                                  James Hatchitt
                                  State Bar No. 24072478
                                  jhatchitt@howrybreen.com
                                  HOWRY, BREEN & HERMAN, L.L.P.
                                  1900 Pearl Street

Austin, TX 78705
(512) 474-7300
(512) 474-8557 (Fax)

**Trial Court:**                    Hon. Amy Clark Meachum
Judge, 201st District Court
Travis County Civil Courthouse
1000 Guadalupe, 5th Floor
Austin, TX 78701
(512) 854-9305

# TABLE OF CONTENTS

**PAGE**

IDENTITY OF PARTIES AND COUNSEL ...............................................................i

TABLE OF CONTENTS ................................................................................ iii

INDEX OF AUTHORITIES...............................................................................v

STATEMENT REGARDING ORAL ARGUMENT ...............................................ix

STATEMENT OF JURISDICTION .....................................................................x

ISSUE PRESENTED......................................................................................xi

STATEMENT OF FACTS AND PROCEDURAL HISTORY.....................................1

SUMMARY OF ARGUMENT ...........................................................................3

STANDARD OF REVIEW................................................................................4

ARGUMENT ................................................................................................5

I.      THE FORUM-SELECTION CLAUSE IS NARROWLY DRAFTED .............................5

II.     NEITHER OF COACH WICKLINE'S CLAIMS FALL WITHIN THE
        NARROW SCOPE OF THE FORUM-SELECTION CLAUSE....................................9

        A.      Coach Wickline's Tortious Interference Claim is not an
                "Action to Enforce" the OSU Contract ................................................9

        B.      Coach Wickline's Declaratory Judgment Action is not an
                "Action to Enforce" the OSU Contract ................................................14

CONCLUSION & PRAYER .............................................................................18

CERTIFICATE OF SERVICE............................................................................20

CERTIFICATE OF COMPLIANCE .....................................................................21

**A<small>PPENDIX</small>**

Final Order of Dismissal and Judgment (CR 195–96) ............................ Tab A

OSU Contract (CR 23–36) .................................................................... Tab B

Defendants' Brief in Support of Motion to Dismiss (CR 75–101) .......... Tab C

December 18, 2014 Hearing Transcript (RR 1–35) ................................ Tab D

Plaintiff's First Amended Original Petition (CR 187–94) ....................... Tab E

# INDEX OF AUTHORITIES

**CASES**                                                                  **Page(s)**

*360 Mortg. Grp., LLC v. Stonegate Mortg. Corp.*,
  No. A-13-CA-942-SS, 2014 WL 2092496 (W.D. Tex. May 19, 2014) .................7

*City of Gadsden v. Boman*,
  143 So.3d 695 (Ala. 2013) ................................................................................8

*Corcovado Music Corp. v. Hollis Music, Inc.*,
  981 F.2d 679 (2d Cir. 1993)............................................................................12

*Daniels v. Dataworkforce LP*,
  No. 14-cv-00822-KMT, 2014 WL 6657794 (D. Colo. Nov. 24, 2014) ................7

*Davis v. Lewis*,
  487 S.W.2d 411 (Tex. Civ. App.—Amarillo 1972, no writ) ..............................11

*Dixon v. TSE Int'l Inc.*,
  330 F.3d 396 (5th Cir. 2003) ..........................................................................12

*Excentus Corp. v. Giant Eagle, Inc.*,
  No. 3:11-CV-3331-B, 2012 WL 2525594 (N.D. Tex. July 2, 2012)............... 7, 12

*Hardware Dealers Mut. Ins. Co. v. Berglund*,
  393 S.W.2d 309 (Tex. 1965)............................................................................18

*In re AIU Ins. Co.*,
  148 S.W.3d 109 (Tex. 2004).................................................................... 17, 18

*In re Counsel Fin. Servs., L.L.C.*,
  No. 13-12-00151-CV, 2013 WL 3895317
  (Tex. App.—Corpus Christi July 25, 2013, orig. proceeding)......................... 6, 12

*In re Harris Corp.*,
  No. 03-13-00192-CV, 2013 WL 2631700
  (Tex. App.—Austin June 4, 2013, no pet.) (mem. op.)....................................4, 5

*In re Int'l Profit Assocs., Inc.*,
    274 S.W.3d 672 (Tex. 2009).................................................................10

*In re Tyco Elecs. Power Sys.*,
    No. 05-04-018008-CV, 2005 WL 237232
    (Tex. App.—Dallas Feb. 2, 2005, orig. proceeding) ...........................17

*J.E.M. v. Fid. & Cas. Co. of N.Y.*,
    928 S.W.2d 668 (Tex. App.—Houston [1st Dist.] 1996, no writ)............... 14, 15

*Lehmann v. Har-Con Corp.*,
    39 S.W.3d 191 (Tex. 2001)................................................................. ix

*Malik v. Hood*,
    No. 11-81090-CIV, 2012 WL 1906306 (S.D. Fla. May 25, 2012).....................16

*Okla. Oncology & Hematology P.C. v. US Oncology, Inc.*,
    160 P.3d 936 (Okla. 2007) ................................................................16

*One Call Sys., Inc. v. Hous. Lighting & Power*,
    936 S.W.2d 673 (Tex. App.—Houston [14th Dist.] 1996, writ denied)..............16

*Perry v. Nat'l City Mortg., Inc.*,
    No. 05-cv-891-DRH, 2006 WL 2375015 (S.D. Ill. Aug. 15, 2006) ......................7

*Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*,
    417 S.W.3d 46 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ................17

*Phillips v. Audio Active Ltd.*,
    494 F.3d 378 (2d Cir. 2007)................................................................12

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*,
    29 S.W.3d 74 (Tex. 2000)................................................................. 10, 13

*Remedial Fin. Corp. v. Indem. Ins. Co. of N. Am.*,
    36 P.2d 858 (Okla. 1934) ................................................................16

*Sacra v. Hudson*,
    59 Tex. 207 (1883) ................................................................15

*Sw. Bell Tel. Co. v. DeLanney*,
   809 S.W.2d 493 (Tex. 1991) ................................................................................10

*Sw. Intelecom, Inc. v. Hotel Networks Corp.*,
   997 S.W.2d 322 (Tex. App.—Austin 1999, pet. denied) ......................................9

*Tenneco Inc. v. Enterprise Products Co.*,
   925 S.W.2d 640 (Tex. 1996)................................................................................9

*Vankineni v. Santa Rosa Beach Development Corp. II*,
   57 So.3d 760 (Ala. 2010) ...................................................................................8

*Yates v. Fleetwood Transp. Servs., Inc.*,
   No. 07-0960, 2007 WL 3146369 (W.D. La. Oct. 26, 2007) .................................8

*Young v. Valt.X Holdings, Inc.*,
   336 S.W.3d 258 (Tex. App.—Austin 2010, pet. dism'd) ..................................4, 5

# STATEMENT OF THE CASE

*Nature of the Case*        Plaintiff Gregory Joe Wickline left his job as Offensive Line Coach at Oklahoma State University for a job as Offensive Coordinator at The University of Texas. Oklahoma State University and its Athletic Director, James Michael Holder, subsequently accused Coach Wickline and The University of Texas of conspiring to avoid Coach Wickline's contractual obligations to Oklahoma State University.

Coach Wickline sued for tortious interference with his employment contract with The University of Texas, and for a declaratory judgment construing a single, disputed term of his contract with Oklahoma State University. Defendants moved to dismiss both claims based on a forum-selection clause in Coach Wickline's prior employment agreement with Oklahoma State University.

*Trial court*        Hon. Amy Clark Meachum, 201st District Court of Travis County, Texas.

*Disposition below*        The trial court granted defendants' motions to dismiss based on the forum-selection clause.

## STATEMENT REGARDING ORAL ARGUMENT

Coach Wickline does not believe oral argument is necessary in this case. The legal issues presented are relatively simple and will be adequately addressed by the parties' briefs.

## STATEMENT OF JURISDICTION

This appeal is from an order granting the defendants' motions to dismiss based on a forum-selection clause. The "Final Order of Dismissal and Judgment" expressly states it is "final and effectively resolves all issues pending before this Court, and is therefore appealable." *See* Tab A at CR 195; *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192–93 (Tex. 2001) ("[A] judgment issued without a conventional trial is final for purposes of appeal if . . . it states with unmistakable clarity that it is a final judgment as to all claims and all parties."). Therefore, this Court has jurisdiction to entertain this appeal.

# ISSUE PRESENTED

Coach Wickline's prior employment agreement with Oklahoma State University contains a forum-selection clause, which states that "[a]ny action to enforce any of the provisions" of that contract "shall be filed" in Oklahoma. Coach Wickline sued the defendants in Texas for tortious interference with a different contract, and sought a declaratory judgment construing a disputed term in the parties' agreement. The defendants filed motions to dismiss based on the forum-selection clause.

Did the trial court err in granting the motions to dismiss?

Plaintiff Gregory Joe Wickline is among the finest football coaches in the country. *See* Tab E [Pl.'s 1st Am. Orig. Pet.] at CR 190. From 2005 through 2013, Coach Wickline was employed by Oklahoma State University as the Cowboys' Offensive Line Coach. *See* Tab E at CR189. The most recent terms of Coach Wickline's employment were set forth in a 2009 employment contract and its two amendments (the "OSU Contract"). *See* Tab B [OSU Contract] at CR 23–36. Contained in that contract is the forum-selection clause at the heart of this appeal: "Any action to enforce any of the provisions of this Agreement shall be filed in the Payne County [Oklahoma] District Court." *See* Tab B at CR 31.

Because OSU knew that Coach Wickline's valuable talents were in high demand, OSU discouraged Coach Wickline from voluntarily terminating his contract by including a liquidated damages provision. *See* Tab E at CR 189–90. As of January 2012, Coach Wickline would have owed OSU approximately $800,000 if he quit his job. *See* Tab B at CR 30, 36. But Coach Wickline did have a way out: a safe harbor provision allowed Coach Wickline to walk away free and clear if he accepted a job as "an Offensive Coordinator (with play calling duties) at a[n] NCAA Division I-A institution." *See* Tab B at CR 34.

In 2014, Coach Wickline exercised his contractual rights and voluntarily terminated his employment with OSU, accepting a promotion to the role of

1

Offensive Coordinator (with play calling duties) at The University of Texas, an NCAA Division I-A institution and a Big 12 Conference rival. *See* Tab E at CR 189. Despite knowing that Coach Wickline's departure complied with the letter and spirit of the OSU Contract, OSU and its Athletic Director, Mike Holder, began a campaign of harassment to bully Coach Wickline—or his new employer—into paying nearly $600,000 in liquidated damages. *See* Tab E at CR 190. As part of this campaign, OSU sent letters to Coach Wickline's UT office accusing him of conspiring with UT to avoid his contractual obligations by contriving a false and misleading job title and lying about his job responsibilities. *See* Tab E at CR 190.

Coach Wickline didn't pay, and neither did UT. Instead, Coach Wickline sued OSU and Holder in Travis County District Court.[1] The petition alleged two causes of action: (1) a claim for tortious interference with Coach Wickline's new employment contract with UT; and (2) a declaratory judgment action asking the court to construe the phrase "Offensive Coordinator (with play calling duties)" in the OSU Contract. *See* Tab E at CR 189–92.

Defendants responded by filing, among other pleadings, a motion to dismiss based on the OSU Contract's forum-selection clause. After a round of briefing and a hearing, the trial court issued a letter stating that the motion was granted. The court subsequently entered final judgment, and this appeal followed.

---

[1] OSU also sued Coach Wickline for breach of contract in Stillwater, Payne County, Oklahoma, where OSU is located. That lawsuit remains pending.

The trial court erred by granting the defendants' motions to dismiss based on the forum-selection clause in the OSU Contract. That clause does not apply to Coach Wickline's claim for tortious interference with contract, nor does it apply to Coach Wickline's declaratory judgment action. The dispositive legal question on appeal—the scope of the forum-selection clause—is plainly answered by the simple text of the parties' agreement.

The scope of the forum-selection clause in the OSU Contract is narrow, applying only to "action[s] to enforce" the OSU Contract. That limiting contractual language distinguishes the clause at issue in this case from the most common forms of forum-selection clauses, which often employ language covering disputes "arising out of" or "relating to" a contract. Presumably relying on the numerous cases the defendants cited involving those broad "arising under" style forum-selection clauses, the trial court impermissibly rewrote the OSU Contract and expanded the scope of its forum-selection clause.

Had the trial court applied the forum-selection clause as it is written, it would have properly concluded that neither of Coach Wickline's claims in this case fall within the scope of the clause. First, Coach Wickline's tortious interference claim is a tort claim—not a contract claim—involving a *different contract*. The defendants' pleading of an affirmative defense of justification, based on their extra-

3

textual reading of the OSU Contract's other provisions, does not transform a tort action into a suit to enforce a contract. The scope of the forum-selection clause here is far narrower than every example touted by the defendants in support of their argument to the contrary. Second, Coach Wickline's declaratory judgment action seeks only construction, not enforcement, of the OSU Contract. Both courts and contracts regularly distinguish between the act of contract interpretation and the act of contract enforcement. Because Coach Wickline did not seek enforcement of the OSU Contract by way of his declaratory judgment action, dismissal was improper.

### STANDARD OF REVIEW

In general, this court's review of a motion to dismiss based on a forum-selection clause employs an abuse-of-discretion standard. *Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 261 (Tex. App.—Austin 2010, pet. dism'd). But the trial court's contractual interpretation of the forum-selection clause, a legal matter, is reviewed de novo. *Id.*

Analysis of a forum-selection clause is a two-step process. *In re Harris Corp.*, No. 03-13-00192-CV, 2013 WL 2631700, at *2 (Tex. App.—Austin June 4, 2013, no pet.) (mem. op.) (citing *Young*, 336 S.W.3d at 262). First, the party seeking to enforce the forum-selection clause has the burden to establish that the clause applies to the opposing party's claims. *Id.* If that showing is made, the

4

burden shifts to the party resisting enforcement of the clause to show that enforcement would be improper. *Id.* The only dispute in this case is whether the forum-selection clause in the OSU Contract applies to Coach Wickline's claims.[2]

To determine the scope of a forum-selection clause, the court should apply ordinary principles of contract interpretation, with the "primary objective" being "to ascertain and give effect to the intentions the parties have objectively manifested in the written instrument." *Young*, 336 S.W.3d at 262. "Contract terms are given their plain, ordinary, and generally accepted meanings, and contracts are to be construed as a whole in an effort to harmonize and give effect to all provisions of the contract." *Id.* at 263.

## ARGUMENT

## I.   THE FORUM-SELECTION CLAUSE IS NARROWLY DRAFTED

The OSU Contract contains a simple and plain forum-selection clause, which reads:

> "Any action to enforce any of the provisions of this Agreement shall be filed in the Payne County District Court."

*See* Tab B at CR 31. The language of that clause is specific and narrow. The clause applies only to actions "to enforce" the provisions of the OSU Contract. Forum-

---

[2] The parties agree that Texas's forum-selection-law principles apply in this case, despite the presence of an Oklahoma choice-of-law clause in the OSU Contract. *See In re Lisa Laser USA, Inc.*, 310 S.W.3d 880, 883 n.2 (Tex. 2010) ("This Court has applied Texas law in the mandamus cases in which the parties seek to enforce a forum-selection clause, even if the contract also contains a choice-of-law clause selecting the application of another's state's substantive law.").

5

selection clauses are often drafted more broadly, applying, for example, to disputes "arising out of" or "related to" a contract. OSU could have drafted its forum-selection clause more broadly, but it chose not to. That choice has consequences. The trial court erred by rewriting the parties' agreement and broadening the scope of the forum-selection clause to match the scope of wholly dissimilar clauses.

In the trial court, the defendants advanced the position that the phrase "[a]ny action to enforce any of the provisions of this Agreement" is equivalent to the phrase "any dispute arising under or involving this Agreement." *See* Tab D [Hearing Transcript] at RR 8:9–13 ("[The OSU Contract] also, Your Honor, had a mandatory forum selection clause that set the District Court of Payne County, Oklahoma, as the situs for *disputes arising under the contract or involving the contract*.") (emphasis added). Arguing from that false premise, the defendants cited several cases involving "arising under" style forum-selection clauses to persuade the court that Coach Wickline's claims fell within the scope of the OSU Contract's forum-selection clause. *E.g.*, *In re Counsel Fin. Servs., L.L.C.*, No. 13-12-00151-CV, 2013 WL 3895317, at *1 (Tex. App.—Corpus Christi July 25, 2013, orig. proceeding) ("any claims and disputes . . . pertaining to . . . any matter arising out of or related to" the contract; "each action . . . arising out of or otherwise relating to" the contract); *Excentus Corp. v. Giant Eagle, Inc.*, No. 3:11-CV-3331-B, 2012

WL 2525594, at *2 (N.D. Tex. July 2, 2012) ("any action arising out of this agreement").

But not all forum-selection clauses are created equal. The universe of potential "action[s] to enforce" a contract is plainly smaller than the universe of potential actions "arising under" or "related to" that contract. For example, a suit for unpaid overtime wages under the Fair Labor Standards Act unquestionably "relates to" a worker's employment contract, but an FLSA action is not a suit "to enforce" that contract. *See, e.g.*, *Daniels v. Dataworkforce LP*, No. 14-cv-00822-KMT, 2014 WL 6657794, at *2 (D. Colo. Nov. 24, 2014) (FLSA claim not within scope of clause covering any action "to interpret or enforce any provision of" the contract); *Perry v. Nat'l City Mortg., Inc.*, No. 05-cv-891-DRH, 2006 WL 2375015, at *4–5 (S.D. Ill. Aug. 15, 2006) (same for clause limited to suits involving the terms of the contract itself); *see also 360 Mortg. Grp., LLC v. Stonegate Mortg. Corp.*, No. A-13-CA-942-SS, 2014 WL 2092496, at *6 (W.D. Tex. May 19, 2014) (employer's suit alleging former employee conspired to steal trade secrets not covered by clause in employment agreement applying to "[a]ny action to enforce, challenge or construe the terms or making of this Agreement or to recover for its breach").

Although there are no Texas cases squarely on point, courts outside of Texas have properly construed "enforcement" style forum-selection clauses more

narrowly than "arising under" or "related to" style clauses. *See Vankineni v. Santa Rosa Beach Development Corp. II*, 57 So.3d 760, 763 (Ala. 2010).[3] In *Vankineni*, the plaintiff signed a contract to purchase a condominium unit, and the purchase contract contained a forum-selection clause requiring "[a]ny action to enforce a provision of" the purchase contract to be brought in Florida. *Id.* at 761. The plaintiff later sued the seller in Alabama to recover the amount he had paid and to have the purchase contract declared invalid and unenforceable. *Id.* at 762. The Alabama Supreme Court held the plaintiff's claims were not covered by the forum-selection clause because the plaintiff was not "seeking to enforce any provision of the purchase contract." *Id.* at 763. To hold to the contrary, the court reasoned, would be "to rewrite the forum-selection clause, under the guise of construing it, to extend its scope to actions arising under or relating to the purchase contract." *Id.*; *see also Yates v. Fleetwood Transp. Servs., Inc.*, No. 07-0960, 2007 WL 3146369, at *4 (W.D. La. Oct. 26, 2007) (suit alleging wrongful denial of benefits under employer-sponsored occupational injury plan was not an "action 'to enforce'" a lease agreement conditioned upon plan subscription).

---

[3] Alabama's principles of contract interpretation generally mirror those of Texas. *See Vankineni*, 57 So.3d at 762 (unambiguous contracts must be enforced as written); *City of Gadsden v. Boman*, 143 So.3d 695, 704 (Ala. 2013) (outlining general principles of contract interpretation). Coach Wickline was unable to locate a decision of any Texas court, state or federal, construing the scope of an "enforcement" style forum-selection clause like the one at issue in this case.

The logic of decisions like *Vankineni* and *Daniels* is sound. A forum-selection clause directed at actions "to enforce" the contract is narrowly tailored to encompass breach-of-contract actions, not unrelated tort claims or requests for declaratory relief. By equating the language in the OSU Contract with much broader "arising under" type clauses, the trial court failed to "give effect to the written expression of the parties' intent." *Sw. Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324 (Tex. App.—Austin 1999, pet. denied); *see also Tenneco Inc. v. Enterprise Products Co.*, 925 S.W.2d 640, 646 (Tex. 1996) ("We have long held that courts will not rewrite agreements to insert provisions parties could have included or to imply restraints for which they have not bargained.").

## II. NEITHER OF COACH WICKLINE'S CLAIMS FALL WITHIN THE NARROW SCOPE OF THE FORUM-SELECTION CLAUSE

Coach Wickline brought two claims against the defendants. First, he sued for tortious interference with his current employment contract with UT. Second, he sued for a declaratory judgment construing the phrase "Offensive Coordinator (with play calling duties)" in the OSU Contract. Neither claim seeks "to enforce" the OSU Contract.

### A. Coach Wickline's Tortious Interference Claim is not an "Action to Enforce" the OSU Contract

By alleging that the defendants tortiously interfered with his employment contract with UT, Coach Wickline is certainly not seeking "to enforce" the OSU

9

Contract. The elements of a tortious interference claim are: "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). None of those elements require Coach Wickline to "enforce" his contract with OSU. Further, a final judgment in Coach Wickline's favor would not "enforce" the OSU Contract, but instead would compensate Coach Wickline for the defendants' unlawful interference with a *different contract*.

Coach Wickline's position is consistent with Texas Supreme Court precedent calling for courts to conduct "common-sense examination[s] of the claims and the forum-selection clause to determine if the clause covers the claims." *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 677 (Tex. 2009). "[A] claim is brought in contract if liability arises from the contract, while a claim is brought in tort if liability is derived from other general obligations imposed by law." *Id.* Put somewhat differently, "[i]f the defendant's conduct . . . would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claims may also sound in tort." *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). In this case, the defendants' liability does not arise from the OSU Contract, which is why Coach Wickline is not suing them for breaching that contract. Instead, their liability arises from the "general duty not to interfere with

10

another's business relations." *Davis v. Lewis*, 487 S.W.2d 411, 414 (Tex. Civ. App.—Amarillo 1972, no writ). The defendants would be liable for their tortious interference even if the OSU Contract did not exist. Because Coach Wickline's tortious interference claim sounds in tort, not in contract, it is not an "action to enforce" the OSU Contract.

Recognizing that the elements of Coach Wickline's tort claim have nothing to do with the OSU Contract, the defendants argued to the trial court that Coach Wickline is nevertheless bringing an "action to enforce" the OSU Contract because their affirmative defense of justification requires reference to the OSU Contract. That argument unpersuasively conflates Coach Wickline's *claim*—the "action"—with the defendants' *affirmative defense*. The nature of Coach Wickline's tort action is not controlled by the defenses the defendants choose to assert.

The defendants' argument to the trial court that the need to reference the OSU Contract to resolve the tortious interference claim transforms this case into an "action to enforce" the OSU Contract is fundamentally flawed in a second way. In advancing that argument, the defendants again relied on distinguishable cases interpreting "arising under" style forum-selection clauses with far broader scopes than the "enforcement" style clause in the OSU Contract.

In *Counsel Financial Services*, for example, the district court noted that the forum-selection clauses were "broad and encompasse[d] *all claims*, including those

11

that may only *relate to* the agreement." 2013 WL 3895317, at \*5 (emphasis added). Because all of the plaintiff's claims, both affirmative and defensive, related to the parties' various loan agreements, the court found the forum-selection clauses in those agreements applied. *Id.* The story in *Excentus Corp.* is similar: the plaintiff sued its contractual partner for patent infringement and sought a declaration that the parties' contract did not grant the defendant a license to practice the patented inventions. 2012 WL 2525594, at \*1. The court held those claims "arose out of" the parties' contract because interpretation of the contract was essential to resolving them. *Id.* at \*4.

Coach Wickline has no quarrel with the holdings of cases like *Counsel Financial Services* and *Excentus Corp.*[4] But the logic of those cases is inextricably bound to broad contractual language not present in the OSU Contract. In the defendants' view, any claim that requires reference to a contract must implicate that contract's forum-selection clause, regardless of the actual language of the clause itself. That rule would ignore one of the most fundamental principles of contract interpretation: words matter. *See Dixon v. TSE Int'l Inc.*, 330 F.3d 396, 398 (5th Cir. 2003) (holding forum-selection clause mandating suit be brought in "The

---

[4] The Second Circuit has repeatedly rejected the reasoning employed in similar cases. *See Phillips v. Audio Active Ltd.*, 494 F.3d 378, 391 (2d Cir. 2007) ("Because the recording contract is only relevant as a defense in this suit, we cannot say that Phillips' copyright claims originate from, and therefore 'arise out of,' the contract."); *see also Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 682–83 (2d Cir. 1993) (explaining that if a contract "is at most a defense" to a non-contractual claim, the forum-selection clause in the contract does not apply).

Courts of Texas" operated as waiver of right to removal because federal courts may be *in* Texas, but they are not *of* Texas).

Alternatively, even if the assertion of a contract right as a defense to a claim were relevant to the forum-selection-clause analysis, the mere pleading of a justification defense did not entitle the defendants to dismissal. It is true that an affirmative defense of justification can defeat a tortious interference claim on the merits, and such a defense may be rooted in a contractual right to interfere. *Prudential Ins. Co.*, 29 S.W.3d at 80. But the Texas Supreme Court also held in *Prudential* that a party "may not exercise an otherwise legitimate privilege by resort to illegal or tortious means." *Id.* at 81. "Thus, if the plaintiff pleads and proves methods of interference that are tortious in themselves, then the issue of privilege or justification *never arises*." *Id.* (emphasis added).

Coach Wickline has alleged the defendants tortiously interfered with his current employment contract with UT by falsely accusing him of, in essence, conspiring to defraud the State of Oklahoma (through the board of regents of one of its universities) to the tune of nearly $600,000. If Coach Wickline ultimately proves those allegations, the defendants' conduct is not justified as a matter of law and the OSU Contract is irrelevant. *See id.* at 82–83 (holding Prudential had failed to establish its justification defense as a matter of law because its contract rights

13

did not "entitle Prudential to falsely accuse FRS of fraud, knowing its charges are baseless").

**B.      Coach Wickline's Declaratory Judgment Action is not an "Action to Enforce" the OSU Contract**

Coach Wickline's declaratory judgment action asked the court to construe the disputed phrase "Offensive Coordinator (with play calling duties)" in the OSU Contract. The parties have a real controversy regarding the meaning of that phrase because the defendants are dissatisfied with the contract they drafted, and have attempted to enforce an interpretation of that clause with no support, textual or otherwise. As the defendants told the district court, the defendants believe that phrase means something other than what it plainly says. *See* Tab C [Defendants' Brief] at CR 84 (suggesting the safe harbor requires Coach Wickline to have "*exclusive* play-calling duties" (emphasis added)). Coach Wickline is entitled to a declaratory judgment construing this disputed term. "An interested party under a written contract whose rights and legal relations are at issue may ask the court to *resolve questions of construction* or validity arising under the contract." *J.E.M. v. Fid. & Cas. Co. of N.Y.*, 928 S.W.2d 668, 671 (Tex. App.—Houston [1st Dist.] 1996, no writ) (emphasis added) (citing TEX. CIV. PRAC. & REM. CODE § 37.004(a)).

A declaratory judgment action seeking an interpretation of one contract term is not an action "to enforce" that contract. Contract construction and enforcement

14

are two fundamentally different procedures. The former calls upon the court to pronounce the meaning of a disputed term, thereby resolving the parties' interpretive dispute. One of the primary purposes of the declaratory judgment action is to allow parties to resolve such disputes and clarify their rights and obligations "even before any wrong has actually been committed," and thus before any enforcement action is ripe for adjudication. *Id.* By contrast, an enforcement action harnesses the machinery of the courts to compel some party to act. A contract enforcement action in the context of this case already exists: OSU's pending lawsuit in Oklahoma alleges Coach Wickline breached the OSU Contract, and OSU seeks as a remedy a money judgment compelling Coach Wickline to pay nearly $600,000 in liquidated damages. Coach Wickline's declaratory action in this case does not ask the court to compel any party to do anything. A favorable judgment in Coach Wickline's favor will not compel OSU to pay damages, or dismiss its Oklahoma lawsuit, or stop harassing Coach Wickline. It will merely give the parties a definitive construction of a term of their contract. Once that construction has been given, any enforcement that is needed will come through some other legal action.

Texas courts have recognized the existence of these dual duties of construction and enforcement for well over a century. *See, e.g.*, *Sacra v. Hudson*, 59 Tex. 207, 208 (1883) ("It is the duty of courts to *construe and enforce*

15

contracts." (emphasis added)). Oklahoma law is identical.[5] *See Okla. Oncology & Hematology P.C. v. US Oncology, Inc.*, 160 P.3d 936, 948 (Okla. 2007) (contract clause "contemplated that either party may file a legal action to *enforce or interpret*" the contract (emphasis added)); *see also Remedial Fin. Corp. v. Indem. Ins. Co. of N. Am.*, 36 P.2d 858, 859 (Okla. 1934) (court's obligation is to "simply construe and enforce the contracts as made"). If *construction* and *enforcement* were synonymous, it would be unnecessary for the courts to explain their role as encompassing both tasks.

This enforcement/construction distinction is often put to use in modern contracts. A well-drafted forum-selection clause may apply, for example, to "[a]ny action to *enforce or construe*" the contract. *Malik v. Hood*, No. 11-81090-CIV, 2012 WL 1906306, at *2 (S.D. Fla. May 25, 2012) (emphasis added) (interpreting Texas-law contract selecting the courts of Dallas County). The *Malik* court held the plaintiff's claims there were within the scope of that "enforce or construe" forum-selection clause precisely because resolution of the claims required the court to *construe* the contract. *Id.* Similarly, contractual attorney's fees provisions often apply to actions "brought by either party to *enforce or interpret* any of the terms" of the contract. *One Call Sys., Inc. v. Hous. Lighting & Power*, 936 S.W.2d 673, 675 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (emphasis added); *see*

---

[5] Because the OSU Contract contains an Oklahoma choice-of-law clause, a Texas court will construe it in accordance with Oklahoma law.

*also Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 60 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (contractual attorney's fees provision triggered by any action "to enforce or interpret any term, provision or condition" of the contract).

In an effort to avoid the most textually faithful reading of the forum-selection clause in this case, the defendants told the trial court that "Texas courts regularly conclude a request for declaratory relief concerning all or part of a contract falls within a forum-selection clause contained within that contract." *See* Tab C [Defendants' Brief] at CR 89. While that statement has elements of truth, its breadth and vagueness hide critical factual distinctions. First, neither case cited by the defendants in support of that proposition even addressed the issue of the *scope* of a forum-selection clause; both were about *enforceability*, the second step of the two-step analysis. *See In re AIU Ins. Co.*, 148 S.W.3d 109, 111–15 (Tex. 2004); *In re Tyco Elecs. Power Sys.*, No. 05-04-018008-CV, 2005 WL 237232, at *1 (Tex. App.—Dallas Feb. 2, 2005, orig. proceeding). Second, even if those cases had addressed the scope issue, their holdings would be irrelevant: neither case involved an "enforcement" style forum-selection clause. In *Tyco Electronics*, the clause was a typical "any dispute involving or arising under" clause, which obviously encompassed a declaratory judgment action regarding the enforceability of a provision of the contract. 2005 WL 237232, at *1. And *AIU* is even less helpful for

17

the defendants, as the clause in that case specifically applied to disputes regarding "the meaning, interpretation or operation of any term" of the contract, thereby capturing a declaratory judgment action concerning the scope of the contract. 148 S.W.3d at 110.

OSU could have drafted the forum-selection clause in its contract with Coach Wickline in the style of the clause at issue in *AIU*, applying to disputes regarding "the meaning, interpretation or operation of any term" in the contract. It did not. Instead, OSU drafted a clause limited to "action[s] to enforce" the contract. If OSU is now unhappy with its drafting choices, its remedy lies in the standard practice of amending the contract. Unilaterally reinterpreting the contract, or asking a court to rewrite its provisions by judicial fiat to be more expansive and beneficial, will not work. *Hardware Dealers Mut. Ins. Co. v. Berglund*, 393 S.W.2d 309, 314 (Tex. 1965) ("[I]t is our duty to construe and enforce contracts and not to make them.").

## CONCLUSION & PRAYER

For the foregoing reasons, Coach Wickline respectfully asks that the Court reverse the trial court's order granting the defendants' motions to dismiss, and remand this case for further proceedings.

Respectfully submitted,

BECK REDDEN LLP

By: /s/ *David J. Beck*
    David J. Beck
    State Bar No. 00000070
    dbeck@beckredden.com
1221 McKinney Street, Suite 4500
Houston, TX 77010
(713) 951-3700
(713) 951-3720

    Karson K. Thompson
    State Bar No. 24083966
    kthompson@beckredden.com
    Christopher R. Cowan
    State Bar No. 24084975
    ccowan@beckredden.com
515 Congress Avenue, Suite 1750
Austin, TX 78701
(512) 708-1000
(512) 708-1002

**ATTORNEYS FOR APPELLANT,
GREGORY JOE WICKLINE**

19

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2015, a true and correct copy of the above and foregoing Brief of Appellant was forwarded to all counsel of record by the Electronic Filing Service Provider, if registered, and by email, as follows:

Sean E. Breen
HOWRY, BREEN & HERMAN, L.L.P.
1900 Pearl Street
Austin, Texas 78705-5408
Email: sbreen@howrybreen.com

***Counsel for Appellees***


*/s/ David J. Beck*
David J. Beck

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Tex. R. App. P. 9.4 because it contains 4,392 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(2).

2.     This brief complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14 point Times New Roman font.

Dated: <u>March 12, 2015</u>.


<u>*/s/ David J. Beck*</u>
David J. Beck
**COUNSEL FOR APPELLANT,**
**GREGORY JOE WICKLINE**

## No. 03-15-00077-CV

# GREGORY JOE WICKLINE,
*Appellant*,

## V.

# BOARD OF REGENTS FOR THE OKLAHOMA AGRICULTURAL AND MECHANICAL COLLEGES, ACTING FOR AND ON BEHALF OF OKLAHOMA STATE UNIVERSITY; AND JAMES MICHAEL HOLDER, IN HIS INDIVIDUAL CAPACITY AND IN HIS CAPACITY AS VICE PRESIDENT FOR ATHLETIC PROGRAMS AND DIRECTOR OF INTERCOLLEGIATE ATHLETICS FOR OKLAHOMA STATE UNIVERSITY,
*Appellees*.

Appeal from the 98th District Court of Travis County, Texas,
Trial Court Case No. D-1-GN-14-004391

## APPENDIX TO BRIEF OF APPELLANT

**TAB**

A   Final Order of Dismissal and Judgment (CR 195-96)

B   OSU Contract (CR 23-36)

C   Defendants' Brief in Support of Motion to Dismiss (CR 75-101)

D   December 18, 2014 Hearing Transcript (RR 1-35)

E   Plaintiff's First Amended Original Petition (CR 187-94)

# TAB A
**Final Order of Dismissal and Judgment**
**(CR 195-96)**

Filed In The District Court
of Travis County, Texas
on _January 23, 2015_
at _3:20_ PM.
Velva L. Price, District Clerk

Cause No. D-1-GN-14-004391

| | | |
|---|---|---|
| GREGORY JOE WICKLINE, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| BOARD OF REGENTS for the Oklahoma | § | |
| Agricultural and Mechanical Colleges, | § | OF TRAVIS COUNTY, TEXAS |
| acting for and on behalf of Oklahoma State | § | |
| University; and JAMES MICHAEL | § | |
| HOLDER, in his individual capacity and in | § | |
| his capacity as Vice President for Athletic | § | |
| Programs and Director of Intercollegiate | § | |
| Athletics for Oklahoma State University, | § | |
| | § | |
| *Defendants.* | § | 98TH JUDICIAL DISTRICT |

## FINAL ORDER OF DISMISSAL AND JUDGMENT

Before this Court are Defendants' motion to enforce a mandatory forum-selection clause and, in the alternative, motion to stay. After careful consideration of the motion, the response, the briefs, the reply, and the pleadings and arguments of counsel, this Court finds the Defendants' Motion to Dismiss based on Mandatory Forum-Selection Clause should be and hereby is **GRANTED** in all things.

All of Plaintiff's claims against Defendants in this lawsuit are hereby **DISMISSED without prejudice** to refiling in the Payne County District Court of Payne County, Oklahoma. This order is final and effectively resolves all issues pending before this Court, and is therefore appealable.

**SO ORDERED.**

Signed: _Jan. 23_____, 2015.

_____
JUDGE PRESIDING

AGREED AS TO FORM:

BECK REDDEN LLP

David J. Beck   *by permission*
State Bar No. 00000070
dbeck@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010
Tel. (713) 951-3700
Fax (713) 951-3720

Christopher R. Cowan
State Bar No. 24084975
ccowan@beckredden.com
Karson K. Thompson
State Bar No. 24083966
kthompson@beckredden.com
515 Congress Avenue, Suite 1750
Austin, Texas 78701
Tel. (512) 708-1000
Fax (512) 708-1002

*Attorneys for Plaintiff Gregory Joe Wickline*

HOWRY BREEN & HERMAN, L.L.P.

Sean D. Breen
State Bar No. 00783515
sbreen@howrybreen.com
Randy Howry
State Bar No. 10121690
rhowry@howrybreen.com
James Hatchitt
State Bar No. 24072478
jhatchitt@howrybreen.com
1900 Pearl Street
Austin, Texas 78705-5408
Tel. (512) 474-7300
Fax (512) 474-8557

*Attorneys for Defendants Board of Regents for the Oklahoma Agricultural and Mechanical Colleges, acting for and on behalf of Oklahoma State University, and James Michael Holder*

196

# TAB B
## OSU Contract
## (CR 23-36)

EMPLOYMENT CONTRACT

This Agreement, made by and between OKLAHOMA STATE UNIVERSITY, hereinafter referred to as the "University", and Gregory Joe Wickline, hereinafter referred to as "Coach";

WITNESSETH:

WHEREAS, University requires the services of an Assistant Coach for the University's Intercollegiate Football Team; and

WHEREAS, Gregory Joe Wickline meets the University's qualifications for the position and has been employed as such by University pursuant to an Employment Contract and Amendments thereto all of which the parties intend to cancel and replace by this Agreement;

NOW, THEREFORE, in consideration of the mutual covenants and conditions herein contained, the University and the Coach agree as follows:

1. Subject to the conditions stated in the provisions of this agreement, the University hereby employs Coach as Assistant Coach for the University's Intercollegiate Football Team at Oklahoma State University for a designated period beginning with the 1st day of January, 2009 and ending on the first to occur of any of the following: (i) December 31, 2013; (ii) 180 days following the resignation of the Head Football Coach; or (iii) termination of this Contract as otherwise provided herein. The Coach hereby agrees to and does accept the terms and conditions for said employment for the designated period. Neither this Contract nor Coach's employment hereunder shall in any way grant the Coach a claim to tenure in employment, or any years of employment attributable to tenure within the University.

2. The compensation paid by the University to the Coach for services and satisfactory performance of the conditions of this Contract shall be at the annual salary rate of $157,500.00 per annum payable in monthly installments out of legally available funds by the University to the Coach on the last day of each calendar month during the term of this Contract. In addition, Coach shall

1

receive from legally available funds bonuses earned, if any, based on the performance incentives attained in the football season of the then current fiscal year in accordance with "Exhibit A" entitled "Financial Incentives," attached hereto and made a part hereof. It is agreed that the compensation so paid shall be subject to the same payroll deductions (for example, state and federal taxes, F.I.C.A. withholding, and retirement plans) that apply to University administrative and professional (A&P) employees. The Coach shall be eligible to participate in group insurance and retirement programs and voluntary payroll deduction programs on the same basis, and with the same employer contributions, that apply to University administrative and professional (A&P) employees.

3. The Coach shall devote his full time and attention to such duties and responsibilities as an Assistant Coach as assigned by and serving under the direction of the University's Head Football Coach. The Coach shall conduct such travel as is necessary to carry out his duties and the Coach shall be entitled to reimbursement for transportation and per diem expenses at the maximum rate authorized by law and University regulations.

4. The Coach shall recognize and comply with the policies, rules, and regulations of and governing Oklahoma State University and its employees and the rules of the Big Twelve Conference and the National Collegiate Athletic Association, as now constituted or as any of the same may be amended during the term hereof.

Coach shall respond, and shall not counsel or instruct any coach, student, or any other person to fail to respond, accurately and fully within a reasonable time to any reasonable request or inquiry relating to the performance of his duties hereunder or the performance of his duties during his prior employment at any other institution of higher learning propounded by University, NCAA, the Big Twelve Conference or other governing body having supervision over the athletic programs of University or such other institution of higher learning, or required by law, governing athletic rules or University policies and regulations.

Without limitation upon any right or remedy of the University in the event the Coach breaches this Contract, it is specifically agreed that if the

2

University finds after due hearing that the Coach is, has been, or was at any time, involved in violations of the NCAA legislation applicable to University or to any prior employer of the Coach which was at the time of such employment a member of NCAA, it may take one or more of the following actions that it deems appropriate: (1) termination of employment; (2) suspension, with or without pay, for a period of time as the University shall determine; (3) modification of duties; or (4) reassignment to other employment duties within the University.

Coach shall indemnify the University for all costs (including attorney fees) incurred by University in responding to any official inquiry of the NCAA resulting in a show cause penalty against the Coach by the Infractions Committee.

5. Coach shall conduct himself with due regard to public convention and morals, shall not do any act that will tend to degrade him in society or bring him into public hatred, contempt, scorn, or ridicule, or that will tend to shock, or insult the community or offend public morals or decency, and he shall not do any act that tends to impair his capacity to fully comply with his obligations hereunder.

6. Coach recognizes that University has assigned a high priority to the academic achievement of the students who participate in its athletic programs and that it is the expectation of the President and the Board of Regents that Coach will emphasize the importance of academic achievement to the students who are athletes at the University. Coach shall maintain a cooperative relationship with Academic Services for Student-Athletes in order to assure student-athletes are offered every opportunity to achieve academic expectations and success.

7. Coach shall comply fully with all NCAA, Conference, and institutional regulations governing outside employment and compensation.

Any television, radio, consultant, endorsement, or outside employment agreement or contract of any nature as well as all other activities related to Coach's involvement in University athletics will be under the supervision, direction, and control of the Athletic Director. All such arrangements and activities must first be approved annually in writing by the Athletic Director and shall not conflict with the best interest of the University.

Coach must receive annually prior written approval from the President for all athletically related income and benefits from sources outside the institution, including but not limited to income from gifts to Coach from donors or from friends of the Athletic Department; annuities; sports camps; housing benefits (including preferential arrangements); country club memberships; complimentary ticket sales; television and radio programs; and endorsements or consultation contracts with athletics shoe, apparel, or equipment manufacturers.

It is specifically understood that Coach shall not use, directly or by implication, the name of the University or its logos in the endorsement of commercial products or services for personal gain without the prior written approval of the President.

8. The University reserves the right to either terminate this Contract, or to suspend the Coach for a period of time from performance of duties with or without pay without termination of this Contract for cause, including but not limited to any of the following : (1) the University has a reasonable basis for believing Coach has been involved in deliberate and significant or repetitive violations of Provision No. 4 of this Agreement, or (2) failure of Coach to comply with any of the provisions set forth in Provision Nos. 5 or 11 of this Agreement, or (3) any conduct of Coach in violation of any criminal statute (excluding minor traffic offenses) whether prosecuted or not, or any act of moral turpitude, or (4) violations by Coach of any of the other terms of this Agreement which cannot be or has not been remedied after thirty (30) days written notice thereof to Coach, or (5) conduct of Coach determined by the University to be seriously prejudicial to its best interests or the best interests of its athletic program, or (6) material misrepresentation of Coach's educational or other qualifications for employment as Coach hereunder, or (7) fraud or dishonesty of Coach in the performance of his duties or responsibilities under this Agreement, or (8) use or consumption by Coach of alcoholic beverages, drugs, controlled substances, steroids or other chemicals in such degree and for such appreciable period as to impair significantly or materially his ability to perform his duties hereunder or failure by Coach to fully cooperate in the enforcement and

4

implementation of any drug testing program established by University for student-athletes, or (9) any cause adequate to sustain the termination or suspension, as the case may be, of any other University employee.

The Head Football Coach or the Director of Intercollegiate Athletics shall have the administrative authority to order suspension of the Coach from duties and salary for causes identified in this Provision No. 8, provided, that notice of any such suspension shall be provided in writing, detailing the reasons for such suspension, and setting forth a reasonable time within which Coach may respond to same. The Coach shall have the procedural right, upon his written request, for a review and hearing relative to any such suspension. Any such hearing shall be governed by the normal University grievance procedures provided for administrative and professional (A&P) employees, as now or hereafter amended, unless other procedures are agreed upon by the parties in lieu thereof.

Termination of this Contract by the University may occur only after recommendation of such action by the Head Football Coach and approval thereof by the Director of Intercollegiate Athletics. If such adverse action is to be initiated for causes identified in this Provision No. 8, the Head Football Coach shall inform Coach in writing of his preliminary intent to recommend termination before making any such formal recommendation to the Director of Intercollegiate Athletics. In such case, the Head Football Coach will inform Coach in writing of specific concerns and provide Coach a meaningful opportunity to address the concerns of the Head Football Coach within a reasonable period of time (in no event less than fifteen (15) days) before proceeding with an adverse recommendation. Any other hearing which may be permitted shall be governed by the normal University grievance procedures provided for administrative and professional (A&P) employees, as now or hereafter amended unless other procedures are agreed upon by the parties in lieu thereof.

In the event this Contract is terminated by University for cause or causes under this Provision No. 8, University's sole liability to Coach shall be limited to payment of salary or installments thereof, which may have been earned and accrued before the end of the month of such termination.

5

9.  Notwithstanding the term of duration of this Contract as stated in Paragraph One (1) hereof, and subject to the terms of Paragraphs Ten (10) and Eleven (11) hereof, either party may terminate this Contract without particular cause by giving written notice to the other party of the terminating party's exercise of this right to terminate.  Such termination shall be effective immediately upon receipt of such written notice by the other party, unless specified otherwise in said written notice.

10.  In the event University terminates this Contract without cause under Paragraph Nine (9) hereof, then Coach agrees to accept liquidated damages as specified in this Section 10 in complete satisfaction of and payment in full for all obligations, if any, due and owing by University to Coach.  As liquidated damages, University shall pay Coach a sum equal to the sum of the gross base monthly salary in effect on the date of termination and remaining due under Section 2 of this Contract but for termination of the Contract, payable in equal monthly installments from legally available funds until the date on which the Contract would have expired, plus any bonuses (i.e., "Financial Incentives" as set forth in "Exhibit A") earned as of the date of termination.  Coach shall be responsible for all taxes thereon.  Coach shall be entitled to maintain health insurance coverage, at Coach's sole expense, as provided under law.

The parties have bargained for and agreed to this liquidated damages provision and have agreed that the payment of such liquidated damages shall constitute reasonable and adequate compensation for damages that might ensue as a result of University's termination of this Contract without cause, including any loss by Coach of any collateral business opportunities or any other benefits, perquisites or income from any other sources or agreements.  Said liquidated damages shall not be construed as a penalty.

Notwithstanding the foregoing, a condition precedent to the University's obligations to pay the foregoing payments is that Coach diligently seek mitigation of this payment obligation by obtaining full-time employment, business or professional income (for example, but not limited to, football coaching, media commentator, speaking engagements, teaching or other academic activities,

6

consulting or participation in business or any other income producing opportunities). Coach shall begin and shall thereafter continue making very diligent efforts to obtain such income as soon as practicable but not later than thirty (30) days following such termination and each thirty (30) days thereafter shall provide University with a written report of the specific efforts undertaken in this regard including the amount of income, if any, resulting directly or indirectly therefrom. University's financial obligation under this Contract shall cease or be reduced commensurately by the amount of any such income.

11. The Coach agrees that he will not personally or, directly or indirectly, through any agent or representative, inquire into, seek, negotiate for, or accept other full-time or part-time employment of any nature at any time during the term of this Contract without first having obtained the written permission of the Head Football Coach and the Director of Intercollegiate Athletics, which permission shall not be unreasonably withheld.

The parties hereby agree that Coach has special, exceptional, and unique knowledge, skill, and ability as a football coach which, in addition to future acquisitions of coaching experience at the University, as well as the University's special need for continuity in its Intercollegiate Football Program, will render the Coach's services unique. The Coach recognizes that the loss of Coach's services to the University, without University approval and release, prior to the expiration of the term of this Contract or any renewal thereof, would cause an inherent loss to the University which cannot be estimated with certainty, or fairly or adequately compensated by money damages.

The Coach therefore agrees, and hereby specifically promises, not to accept employment, under any circumstances, as a football coach at any institution of higher education which is a member of the National Collegiate Athletic Association, or for any football team participating in any professional league or conference in the United States or elsewhere, requiring performance of duties prior to the expiration date of the term of this Contract or any extension thereof, without first obtaining a release of this Contract, or a negotiated settlement thereof in writing accepted by the Coach and the Director of

7

Intercollegiate Athletics and approved by the President of the University.

In the event of Coach's termination of this Contract without cause under Paragraph Nine (9) hereof prior to its expiration date without first obtaining a release therefrom by the University, Coach shall pay to University, as liquidated damages, a sum equal to fifty percent (50%) of the sum of the gross base monthly salary in effect on the date of termination and remaining due under Section 2 of this Contract but for termination of the Contract, said sum to become due and payable within thirty (30) days of the effective date of termination of the Contract, *provided, however,* University agrees to release Coach from his obligations under the Contract upon his request in order to enable him to assume employment as a Head Football Coach at a NCAA Division I-A institution and thereafter no liquidated damages shall be payable by Coach upon his termination of the Contract without cause. The parties have bargained for and agreed to the foregoing liquidated damages provision, giving consideration to the fact that University will incur administrative, recruiting, resettlement, and other costs in obtaining a replacement for Coach, in addition to potentially increased compensation costs if Coach terminates this Agreement prior to its expiration, which damages are extremely difficult or impracticable to determine with certainty. The payment of said sum shall constitute adequate and reasonable compensation to the University for the damages and injury suffered because of such termination by Coach. The foregoing shall not be, nor be construed to be, a penalty.

12. The Coach shall be entitled to annual vacation or leave time and sick leave in accordance with University policies governing administrative and professional (A&P) employees; except, however, no terminal vacation leave (i.e., accrued but unused annual leave) shall be due to or claimed by Coach upon termination or separation from University employment.

13. The University, as additional compensation to Coach, shall make arrangements for the provision to Coach on a loan basis an automobile for his use. It is further agreed that University shall provide and make available to Coach appropriate gasoline credit cards for Coach's use in the performance of his

8

duties with the University pursuant to this Contract, which cards shall be available to Coach throughout the term of this Contract. The University further agrees to provide appropriate liability and comprehensive automobile insurance to cover Coach in the use and operation of said vehicle, during the term of this Contract.

14. Any action to enforce any of the provisions of this Agreement shall be filed in the Payne County District Court. No such action may be filed until the party claiming to be aggrieved shall first have delivered to the other a written notice of intention to file suit, including an outline of complaints. This notice shall be delivered at least 30 days before any suit is filed, and the parties shall use that period to engage in good-faith negotiations aimed at resolving the dispute without litigation. This paragraph is not intended to limit or circumscribe the legal rights of any party thereto, but rather to ensure that the parties exhaust all avenues of seeking a mutually agreeable accommodation of their differences before instituting litigation. In any situation where the terms of this paragraph might affect the legal rights of any party hereto, the parties shall stipulate to appropriate extensions of limitation periods and other matters to eliminate any such potential effect.

15. It is understood and agreed that this Contract shall not be effective until signed by the President of Oklahoma State University, with the recommendation of its Head Football Coach and its Director of Intercollegiate Athletics, and that no amendments, alterations, or interpretations thereof shall be binding upon the University unless so made in writing and so approved by the President.

16. The relationship between the Coach and the University shall be determined solely by the terms and conditions of this Contract and this Contract supersedes and replaces all previous agreements between the parties and amendments thereto which are hereby cancelled by mutual consent.

17. This Contract has been entered into under and shall be governed by the laws of the State of Oklahoma and any provision of this Contract prohibited by the laws of said State shall be ineffective to the extent of such prohibition

9

without invalidating the remaining provisions of this Contract.

18. This Contract may be amended by mutual agreement executed in writing and appended hereto. It is contemplated that any adjustments in compensation paid the Coach that may be agreed upon will be accomplished in the same manner and on the same forms as are utilized by the University for other Athletic Department and University employees.

DATED as of the 1st day of January, 2009.

Recommended:

_____
Michael R. Gundy
Head Football Coach

_____
Mike Holder, Vice President for
Athletic Programs and Director
of Intercollegiate Athletics

COACH

_____
Gregory Joe Wickline

OKLAHOMA STATE UNIVERSITY

By: _____
V. Burns Hargis
President

10

Financial Incentives

*Overall Performance Incentives*

| Category | Base Amount |
|---|---|
| Championship | |
| National Championship | $20,000.00 |
| Big 12 Championship | $10,000.00 |
| Big 12 South Championship | $ 5,000.00 |

Final National Ranking -- CNN/USA Today Poll

| | |
|---|---|
| Top 10 | $5,000.00 |
| 11-15 | $3,000.00 |
| 16-25 | $2,000.00 |

Post Season Bowl Game Participation*

| | |
|---|---|
| BCS Bowl | Up to 2 months University salary as determined by the Athletic Director |
| All Others | Up to 1 month University salary as determined by the Athletic Director |

*Post Season Bowl Incentive payments shall not be earned by or payable to Coach if he voluntarily leaves the employment of the University and/or terminates this Contract without cause prior to the official date for signing of the National Letter of Intent for the sport of football following the Bowl appearance.

The incentives will be paid according to the highest level achieved in each category. Thus, only one payment per category is applicable. *The decision of the Athletic Director shall be final as to any interpretations or disputes pertaining to these financial incentives.*

Exhibit A

33

# FIRST AMENDMENT
## TO
## EMPLOYMENT CONTRACT

This First Amendment is hereby entered into effective this 1st day of January 2011 to that certain Employment Contract dated January 1, 2009, between Oklahoma State University and Gregory Joe Wickline.

IN CONSIDERATION of the performance of the covenants and conditions contained herein and in the said Employment Contract dated January 1, 2009, the parties hereto agree that said Employment Contract is hereby amended in the following respects only:

- The annual salary set forth in Paragraph Two (2) is hereby increased to $200,000.00 beginning January 1, 2011;
- Paragraph 1.(ii) is modified to read as follows "one year following the resignation of the Head Football Coach; or";
- In Section 11 the referenced percentage for calculating liquidated damages payable by Coach to University shall be increased to seventy-five percent (75%);
- That in addition to employment as a Head Football Coach, Coach shall also be released from the obligation to pay liquidated damages upon assumption of employment as an Offensive Coordinator (with play calling duties) at a NCAA Division I-A institution or as an Assistant Coach in the NFL; and
- "Exhibit A" entitled "Financial Incentives" attached to said Contract is hereby deleted and the attached "Amended Exhibit A" is substituted therefor.

It is expressly agreed that this Amendment is supplemental to the original Employment Contract of January 1, 2009, which is made a part hereof by reference, and all terms, conditions, and provisions of said original Contract, unless specifically modified hereby, are made a part hereof as though expressly incorporated and included herein.

IN WITNESS WHEREOF, the parties hereto have executed this First Amendment on the date and year first above written.

Recommended:

Michael R. Gundy
Head Football Coach

COACH

Gregory Joe Wickline

OKLAHOMA STATE UNIVERSITY

By: _____
V. Burns Hargis
President

Mike Holder, Vice President for
Athletic Programs and Director of
Intercollegiate Athletics

34

Financial Incentives

Assistant Coach

(Amended Exhibit A)

## Overall Performance Incentives

| Category | Base Amount |
| --- | --- |

### Championship

| | |
| --- | --- |
| National Championship | $20,000.00 |
| Big 12 Championship | $10,000.00 |
| Big 12 South Championship | $ 5,000.00 |

### Final National Ranking – CNN/USA Today Poll

| | |
| --- | --- |
| Top 10 | $5,000.00 |
| 11-15 | $3,000.00 |
| 16-25 | $2,000.00 |

### Post Season Bowl Game Participation

| | |
| --- | --- |
| BCS Bowl | Up to 2 months total compensation (salary plus talent) as determined by the Athletic Director |
| All Others | Up to 1 month total compensation (salary plus talent) as determined by the Athletic Director |

The incentive payments shall be made in January according to the highest level achieved in each category. Thus, only one payment per category is applicable. The decision of the Athletic Director shall be final as to any interpretations or disputes pertaining to these financial incentives.

## SECOND AMENDMENT
## TO
## EMPLOYMENT CONTRACT

This Second Amendment is hereby entered into effective this 1st day of January, 2012, to that certain Employment Contract dated January 1, 2009, between Oklahoma State University and Gregory Joe Wickline.

IN CONSIDERATION of the performance of the covenants and conditions contained herein and in the said Employment Contract dated January 1, 2009, as subsequently amended by a First Amendment thereto, the parties hereto agree that said Employment Contract is hereby amended in the following respects only:

- The date set forth in Paragraph 1.(i) of said Employment Contract is changed to December 31, 2016; and

- Subject to the exceptions allowing release in Section 11, the referenced percentage for calculating liquidated damages payable by Coach to University shall be one hundred percent (100%) in the event Coach accepts employment by a member institution of the Big Twelve Conference.

It is expressly agreed that this Second Amendment is supplemental to the original Employment Contract of January 1, 2009, and First Amendment thereto, which are made a part hereof by reference, and all terms, conditions, and provisions of said original Contract, and First Amendment thereto, unless specifically modified hereby, are made a part hereof as though expressly incorporated and included herein.

IN WITNESS WHEREOF, the parties hereto have executed this Second Amendment on the date and year first above written.

Recommended:

_____
Michael R. Gundy
Head Football Coach

COACH

_____
Gregory Joe Wickline

_____
Mike Holder, Vice President for
Athletic Programs and Director of
Intercollegiate Athletics

OKLAHOMA STATE UNIVERSITY

By: _____
V. Burns Hargis
President

36

# Tab C
**Defendants' Brief in Support of Motion to Dismiss**
**(CR 75-101)**

Cause No. D-1-GN-14-004391

| | | |
|---|---|---|
| GREGORY JOE WICKLINE, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| | § | |
| BOARD OF REGENTS for the Oklahoma | § | OF TRAVIS COUNTY, TEXAS |
| Agricultural and Mechanical Colleges, | § | |
| acting for and on behalf of Oklahoma State | § | |
| University; and JAMES MICHAEL | § | |
| HOLDER, in his individual capacity and in | § | |
| his capacity as Vice President for Athletic | § | |
| Programs and Director of Intercollegiate | § | |
| Athletics for Oklahoma State University, | § | |
| | § | |
| *Defendants.* | § | 98TH JUDICIAL DISTRICT |

---

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS BASED ON MANDATORY FORUM-SELECTION CLAUSE OR, IN THE ALTERNATIVE, MOTION TO STAY

---

HOWRY BREEN & HERMAN, L.L.P.

Sean E. Breen
State Bar No. 00783715
sbreen@howrybreen.com
Randy Howry
State Bar No. 10121690
rhowry@howrybreen.com
James Hatchitt
State Bar No. 24072478
jhatchitt@howrybreen.com
1900 Pearl Street
Austin, Texas 78705-5408
Tel. (512) 474-7300
Fax (512) 474-8557

*Attorneys for Defendants Board of Regents for the Oklahoma Agricultural and Mechanical Colleges, acting for and on behalf of Oklahoma State University, and James Michael Holder*

75

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................... 1

II. BACKGROUND ...................................................................................................... 2

    A. The Contract's liquidated-damages clause and its amendments............................. 3

    B. Mr. Wickline leaves OSU to accept the position of "offensive coordinator" at UT ....................................................................................... 5

    C. Shawn Watson, not Mr. Wickline, is calling offensive plays for UT's football team. ..................................................................................... 5

    D. The Oklahoma lawsuit ................................................................................... 6

    E. Mr. Wickline's belated race to the courthouse ................................................. 7

III. ARGUMENTS AND AUTHORITIES........................................................................ 7

    A. The Contract's mandatory forum-selection clause compels dismissal of Mr. Wickline's claims. ........................................................ 7

        1. The Contract's mandatory forum-selection clause applies to claims that "give force or effect to or carry out the clauses of the Contract." ...................................................................... 8

        2. All of Mr. Wickline's claims fall within the scope of the Contract's mandatory forum-selection clause. ......................................... 10

        3. Mr. Wickline cannot clearly show the Contract's mandatory forum-selection clause should not be enforced....................... 15

        4. Defendant Mike Holder is entitled to invoke the Contract's mandatory forum-selection clause. ......................................... 16

    B. Comity requires this Court to defer to the first-filed Oklahoma lawsuit.............................................................................................. 17

IV. CONCLUSION....................................................................................................... 21

CERTIFICATE OF SERVICE ................................................................................ 23

76

## TABLE OF AUTHORITIES

Texas Cases

*Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66 (Tex. App.—Dallas 1996, no writ)...............................................................................................8, 12

*AIU Ins. Co.*, 148 S.W.3d 109 (Tex. 2004) ..................................................................12

*Ashton Grove L.C. v. Jackson Walker L.L.P.*, 366 S.W.3d 790 (Tex. App.—Dallas 2012, no pet.) ..........................................................................................19, 20

*Barnette v. United Research Co.*, 823 S.W.2d 368 (Tex. App.—Dallas 1991, writ denied).......................................................................................................12

*Busse v. Pacific Cattle Feeding Fund # 1, Ltd.*, 896 S.W.2d 807, 812–13 (Tex. App.—Texarkana 1995, writ denied) ..........................................................8

*Crown Leasing Corp. v. Sims*, 92 S.W.3d 924 (Tex. App.—Texarkana 2002, no pet.) ...............................................................................................................18

*Fish & Falk, L.L.P. v. Pinkston's Lawnmower & Equip., Inc.*, 317 S.W.3d 523 (Tex. App.—Dallas 2010, no pet.)...........................................................15

*Greenwood v. Tillamook Country Smoker, Inc.*, 857 S.W.2d 654 (Tex. App.—Houston [1st Dist.] 1993, no writ) ..................................................8

*In re ADM Inves. Servs., Inc.*, 304 S.W.3d 371 (Tex. 2010) ..................................8, 15

*In re BP Oil Supply Co.*, 317 S.W.3d 915 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding) ..................................................................................20, 21

*In re Cornerstone Healthcare Holding Grp., Inc.*, 348 S.W.3d 538 (Tex. App.—Dallas 2011, no pet.) ..................................................................................17

*In re Counsel Fin. Servs., LLC*, No. 13-12-00151-CV, 2013 Tex. App. LEXIS 9255 (Tex. App.—Corpus Christi July 25, 2013, orig. proceeding) ........................13

*In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672 (Tex. 2009) ..................................9, 12

*In re Laibe Corp.*, 307 S.W.3d 314 (Tex. 2010)...................................................7, 15

*In re Lisa Laser U.S., Inc.*, 310 S.W.3d 880 (Tex. 2010) ..........................................7

*In re State Farm Mut. Auto. Ins. Co.*, 192 S.W.3d 897 (Tex. App.—Tyler 2006, orig. proceeding) ..................................................................................18, 19

*In re Tyco Elecs. Power Sys., Inc.*, No. 05-04-01808-CV, 2005 Tex. App. LEXIS 819 (Tex. App.—Dallas Feb. 2, 2005, orig. proceeding) ........................11

*MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660 (Tex. 2009) ...................12

*Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605 (Tex. App—Houston [1st Dist.] 2005, no pet.).......................................................9, 17

*Pozero v. Alfa Travel, Inc.*, 856 S.W.2d 243, 244 (Tex. App.—San Antonio 1993, no writ)........................................................................................................8

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74 (Tex. 2000).....................14

*RSR Corp. v. Siegmund*, 309 S.W.3d 686 (Tex. App.—Dallas 2010, no pet.) .......................... 9, 10

*Space Master Int'l, Inc. v. Porta-Kamp Mfg. Co.*, 794 S.W.2d 944 (Tex. App.-Houston [1st Dist.] 1990, no writ) ................................................................ 18, 20, 21

*Sw. Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322 (Tex. App.—Austin 1999, pet. denied) ........................................................................................................ 9

*Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258 (Tex. App.—Austin 2010, pet. dism'd) ................................................................................................................ 8, 9, 15

**Federal Cases**

*Aerus LLC v. Pro Team, Inc.*, No. 3:04-CV-1985-M, 2005 U.S. Dist. LEXIS 8559 (N.D. Tex. May 9, 2005) .................................................................................... 14

*Excentus Corp. v. Giant Eagle, Inc.*, No. 3:11-CV-3331-B, 2012 U.S. Dist. LEXIS 91250 (N.D. Tex. July 2, 2012) ........................................................... 14

**Other Authorities**

BLACK'S LAW DICTIONARY (8th ed. 2004) .................................................................. 10

MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003) ............................... 10

Subject to and without waiver of their special appearances, Defendants Board of Regents for the Oklahoma Agricultural and Mechanical Colleges, acting for and on behalf of Oklahoma State University (OSU), and James Michael Holder, in both his individual capacity and his official capacity as Vice President for Athletic Programs and Director of Intercollegiate Athletics for Oklahoma State University, file this brief in support of their motion to dismiss based on a mandatory forum-selection clause or, in the alternative, motion to stay, and in support thereof would respectfully show as follows:

## I.     INTRODUCTION

This second-filed, forum-shopped lawsuit does not belong in this Court. OSU and Plaintiff Gregory Joe Wickline dispute the nature of his current employment as an assistant football coach for the University of Texas at Austin (UT) and, as a result, Mr. Wickline's obligation to pay liquidated damages for leaving his previous position as an assistant football coach for OSU without cause. (The liquidated damages are required under an employment contract Mr. Wickline signed with OSU on January 1, 2009, and two subsequent amendments (the Contract).[1])

After months of attempted resolution with and contract-mandated notice to Mr. Wickline, OSU filed suit for breach of contract against Mr. Wickline in the District Court of Payne County, Oklahoma, on October 17, 2014. Three days later, Mr. Wickline filed this lawsuit in this Court, which should be halted for either or both of the following reasons:

- **Mr. Wickline and OSU selected the District Court of Payne County, Oklahoma, as the exclusive venue to enforce the provisions of Mr. Wickline's employment contract.** The substance of Mr. Wickline's claims against OSU and Mr. Holder in this lawsuit implicate the Contract's mandatory forum-selection clause, and his claims necessarily require an interpretation of the Contract. For both of those reasons, all of Mr. Wickline's claims fall within this clause under Texas law.

---

[1] Employment Contract between Gregory Joe Wickline and Oklahoma State University (Jan. 1, 2009), attached as Exhibit 1; First Amendment to Employment Contract (Jan. 1, 2011), attached as Exhibit 2; Second Amendment to Employment Contract (Jan. 1, 2012), attached as Exhibit 3.

-1-

79

- **As a matter of comity, this Court should stay these proceeding out of deference to the first-filed Oklahoma lawsuit.** In accordance with the Contract's mandatory forum-selection clause, OSU filed suit for breach of contract in Oklahoma state court in Payne County, three days before this lawsuit was filed. Because the Oklahoma lawsuit involves the same subject matter as this lawsuit and will resolve all claims and all defenses as to all parties in both lawsuits, Texas law strongly urges the stay of this lawsuit.

Accordingly, OSU and Mr. Holder respectfully request an order: (i) dismissing all of Mr. Wickline's claims in this lawsuit without prejudice based on the Contract's mandatory forum-selection clause; or, in the alternative, (ii) staying this lawsuit pending the outcome of the first-filed Oklahoma lawsuit.

## II.     BACKGROUND

Mr. Wickline is a very good football coach. That is why OSU originally hired him in 2005, offered him the Contract on January 1, 2009, to remain as an assistant coach for the OSU football team, and granted him a raise and extended the Contract through two different amendments. During this process, both sides inserted provisions into the Contract to protect themselves if certain circumstances arose. For example, because Mr. Wickline's importance to the football team and OSU was valuable and difficult to calculate, the Contract was intended to protect OSU in the event Mr. Wickline left before the Contract expired. The following three provisions are important to Defendants' motion:

(i)     a liquidated-damages clause to compensate OSU if Mr. Wickline terminated the Contract without cause before it expired on its own terms;[2]

(ii)    a provision that would permit Mr. Wickline to avoid the liquidated-damages clause if he terminated the Contract without cause to assume employment as, among other things, "an Offensive Coordinator (with play calling duties) at a NCAA Division I-A institution";[3] and

---

[2] *See* Ex. 1 (Contract), at ¶ 11.

[3] *See* Ex. 1 (Contract), at ¶ 11; Ex. 2 (first amendment to the Contract); Ex. 3 (second amendment to the Contract).

-2-

80

(iii)	a mandatory forum-selection clause that selected the District Court of Payne County, Oklahoma, as the exclusive venue for a lawsuit to enforce the Contract.[4]

## A.	The Contract's liquidated-damages clause and its amendments

As the Contract explains, and as the parties agreed, Mr. Wickline has "special, exceptional, and unique knowledge, skill, and ability as a football coach which . . . render [his] services unique,"[5] and OSU's loss of his services before the Contract expires "cannot be estimated with certainty, or fairly or adequately compensated by money damages."[6] Replacing Mr. Wickline would affect OSU in many ways:

(i)	the valuable relationships he developed while recruiting players to join OSU's football team would be impacted, particularly if he left OSU to join a competing member institution of the Big Twelve Conference, where his recruiting relationships could be used for the benefit of a direct competitor recruiting from the same geographic region as OSU;

(ii)	his coaching and development of current players would be adversely affected;

(iii)	it would take time and resources to recruit, hire, and train Mr. Wickline's replacement, and

(iv)	his knowledge of OSU's offensive schemes and tendencies could be reported to OSU's direct conference competition to be used against OSU.

Many, if not most, of these consequences cannot accurately be measured in dollars.

To account for these difficult-to-measure damages that would be caused by Mr. Wickline's premature departure from OSU, the parties agreed upon and contracted for liquidated damages in the event the Contract was terminated before it expired on its own terms.[7] The Contract initially provided that if Mr. Wickline left OSU for any reason—other than to become the head football

---

[4] Ex. 1 (Contract), at ¶ 14.

[5] Ex. 1 (Contract), at ¶ 11.

[6] Ex. 1 (Contract), at ¶ 11.

[7] *See* Ex. 1 (Contract), at ¶¶ 9–11.

- 3 -

coach at an NCAA Division I-A institution—he would owe OSU liquidated damages in the amount of 50% of the remaining salary he was due under the Contract on the date of termination.[8] The Contract's liquidated-damages clause runs both ways: if OSU terminated the Contract without cause, it would become obligated to pay Mr. Wickline his salary for the remainder of the Contract.[9]

The head-coach exemption, and other exemptions discussed below, were intended to remove disincentives for Mr. Wickline to climb the football-coaching ladder and pursue positions with more responsibility with other teams. Such clauses are not uncommon for assistant football coaches, and this one permitted Mr. Wickline to seek advancement elsewhere while still protecting OSU from early contract termination if Mr. Wickline attempted to make a lateral move to accept a similar assistant coaching job at another school.

The liquidated-damages provisions were later amended in two important respects. First, two additional categories of jobs were added for which Mr. Wickline would not owe liquidated damages if he left OSU early: (i) offensive coordinator (with play calling duties) at an NCAA Division I-A institution or (ii) assistant coach in the National Football League.[10] Second, subject to the job-category exemptions explained earlier, the amount of liquidated damages was increased to 100% of Mr. Wickline's remaining salary on the date of termination if he accepted employment with another member institution of the Big Twelve Conference.[11] As discussed above, the harm caused if Mr. Wickline left OSU to accept employment with a direct conference competitor would be greater than if he left to join other schools: among other things, he would be utilizing recruiting

---

[8] Ex. 1 (Contract), at ¶ 11.

[9] Ex. 1 (Contract), at ¶ 10.

[10] *See* Ex. 2 (first amendment to the Contract).

[11] *See* Ex. 3 (second amendment to the Contract).

relationships he developed at OSU for the benefit of a direct regional competitor, and would be providing knowledge of OSU's offensive schemes to an opponent it played every year.

**B.      Mr. Wickline leaves OSU to accept the position of "offensive coordinator" at UT**

On or about January 12, 2014, Mr. Wickline unilaterally terminated the Contract and was hired as the offensive line coach and supposed "offensive coordinator" for the UT football team by UT's new head football coach, Charlie Strong. (Mr. Strong had recently been hired by UT after spending the previous four years as the head football coach for the University of Louisville.) Mr. Wickline and Mr. Strong had previously worked together when Mr. Wickline served on the football coaching staff at the University of Florida.

At the time, Mr. Wickline represented to OSU his new title at UT would be "offensive coordinator" and that he would have "play-calling duties," thereby allegedly excusing his payment of liquidated damages under the second amendment to the Contract.[12] Based on Mr. Wickline's representations, OSU did not attempt to enforce the liquidated-damages clause in the Contract when Mr. Wickline left in January 2014. Later, OSU discovered Mr. Wickline's representations were untrue.

**C.      Shawn Watson, not Mr. Wickline, is calling offensive plays for UT's football team.**

At or near the same time Mr. Wickline was hired by UT, Shawn Watson was also hired as "assistant head coach for offense." Immediately before joining UT, Mr. Watson served as the offensive coordinator for Mr. Strong at the University of Louisville, where Mr. Watson called offensive plays. During spring football practices a few months after Mr. Watson and Mr. Wickline were hired, Mr. Strong was quoted as saying: (i) Mr. Watson is "gonna be in charge" of play

---

[12] *See* Ex. 3 (second amendment to the Contract).

83

calling, to CBS Sports reporter Jeremy Fowler;[13] and (ii) in terms of play-calling, "[t]he one final voice will be Shawn," to ESPN reporter Max Olson.[14] A number of things became clear after Mr. Strong's comments to the media: Mr. Wickline was UT's "offensive coordinator" in name only, he would not have exclusive play-calling duties, and his new title was likely an attempt to avoid the Contract's liquidated-damages clause.

Mr. Holder, in his official capacity as Vice President for Athletic Programs for OSU, sent Mr. Wickline a letter on March 24, 2014, to inform him his new position at UT did not exempt Wickline from payment of liquidated damages under Section 11 of the Contract after Mr. Strong publicly confirmed the true nature of Mr. Wickline's new position with UT.[15] Accordingly, OSU requested payment of the liquidated damages described by Section 11 of the Contract.[16]

## D. The Oklahoma lawsuit

As required by Section 14 of the Contract, a second letter was sent to Mr. Wickline on April 22, 2014, which gave him 30 days' notice of OSU's intent to file a lawsuit to enforce the Contract's liquidated-damages clause.[17] After months of waiting for Mr. Wickline to comply with the Contract's obligations, OSU filed suit in the District Court of Payne County, Oklahoma, on October 17, 2014 (the Oklahoma lawsuit). A copy of the file-stamped petition in *Board of Regents v. Gregory Joe Wickline*, cause number CJ-2014-430, is attached as Exhibit 8.

---

[13] Fowler article (Mar. 7, 2014), at 2, attached as Exhibit 4.

[14] Olson article (Mar. 19, 2014), at 1, attached as Exhibit 5.

[15] *See generally* Holder letter to Wickline (Mar. 24, 2014), attached as Exhibit 6.

[16] Ex. 6 (Holder letter to Wickline), at 2.

[17] *See* Stephens letter to Wickline (Apr. 22, 2014), attached as Exhibit 7; Ex. 1 (Contract), at ¶ 14.

### E. Mr. Wickline's belated race to the courthouse

Instead of proceeding in Oklahoma—as required by his agreement in the Contract and where a lawsuit was already pending—Mr. Wickline filed this second lawsuit three days later, on October 20, 2014 (the Texas lawsuit). He has asserted two claims in this suit, both of which will or could be resolved by the Oklahoma lawsuit: (1) a request for declaratory relief against OSU to construe and interpret the phrase "Offensive Coordinator (with play calling duties)" from the Contract; and (2) tortious interference with existing contractual relations against both OSU and Mr. Holder, based on their alleged interference with his new UT contract.

## III. ARGUMENTS AND AUTHORITIES

Defendants move to dismiss all of Mr. Wickline's claims in this lawsuit based on the Contract's mandatory forum-selection clause. In the alternative, Defendants move to stay proceedings in this lawsuit until the first-filed Oklahoma lawsuit is resolved.

### A. The Contract's mandatory forum-selection clause compels dismissal of Mr. Wickline's claims.

While the Contract contains a choice-of-law provision stating it is being entered into under and shall be governed by Oklahoma law,[18] Texas courts apply Texas law when interpreting and applying forum-selection clauses, regardless of whether the parties contracted to apply the substantive law of another jurisdiction.[19] Therefore, Texas forum-selection law should be applied to this dispute.

Under Texas law, forum-selection clauses are generally enforceable and presumptively valid.[20] A motion to dismiss is the proper procedural vehicle to enforce a mandatory forum-

---

[18] Ex. 1 (Contract), at ¶ 17.

[19] *See In re Lisa Laser U.S., Inc.*, 310 S.W.3d 880, 883 n.2 (Tex. 2010).

[20] *In re Laibe Corp.*, 307 S.W.3d 314, 316 (Tex. 2010).

- 7 -

selection clause.[21]  A two-step analysis is used to determine the applicability and enforceability of a forum-selection clause:[22]

- First, the party seeking to enforce the clause bears the burden to demonstrate two things: the parties entered into an agreement for an exclusive forum to settle disputes, and the scope of the forum-selection agreement applies to the claims involved.[23]

- Second, the burden shifts to the party resisting enforcement to clearly show: (1) enforcement would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial.[24]

1.     **The Contract's mandatory forum-selection clause applies to claims that "give force or effect to or carry out the clauses of the Contract."**

As the parties seeking to enforce a forum-selection clause, Defendants bear the burden under step one to show the clause applies to the claims at issue.[25]  Here, there should be no dispute the Contract contains a forum-selection clause: Section 14 plainly requires that any lawsuit to enforce the Contract must be filed in Payne County, Oklahoma.[26]  The operative language of the Contract's forum-selection clause is pasted below:

---

[21] *See Accelerated Christian Educ., Inc. v. Oracle Corp.*, 925 S.W.2d 66, 70 (Tex. App.—Dallas 1996, no writ); *Busse v. Pacific Cattle Feeding Fund # 1, Ltd.*, 896 S.W.2d 807, 812–13 (Tex. App.—Texarkana 1995, writ denied); *Greenwood v. Tillamook Country Smoker, Inc.*, 857 S.W.2d 654, 657 (Tex. App.—Houston [1st Dist.] 1993, no writ); *Pozero v. Alfa Travel, Inc.*, 856 S.W.2d 243, 244 (Tex. App.—San Antonio 1993, no writ).

[22] *Young v. Valt.X Holdings, Inc.*, 336 S.W.3d 258, 262 (Tex. App.—Austin 2010, pet. dism'd).

[23] *Young*, 336 S.W.3d at 262.

[24] *In re ADM Inves. Servs., Inc.*, 304 S.W.3d 371, 375 (Tex. 2010).

[25] *Young*, 336 S.W.3d at 262.

[26] Ex. 1 (Contract), at ¶ 14.

> to cover Coach in the use and operation of said vehicle, during the term of this Contract.
>
> 14. Any action to enforce any of the provisions of this Agreement shall be filed in the Payne County District Court. No such action may be filed until the party claiming to be aggrieved shall first have delivered to the other a written notice of intention to file suit, including an outline of complaints.

Further, the use of the phrase "shall be filed" renders the clause mandatory under Texas law.[27] The only remaining question—and the likely source of Mr. Wickline's resistance—is whether his claims fall within the scope of the clause. The answer to that question is yes (as he himself has conceded in his recent filings in the Oklahoma lawsuit).[28]

In determining the scope of a forum-selection clause, Texas courts apply principles of contract interpretation, with the primary objective being to ascertain and give effect to the parties' intentions.[29] That means, unless the contract shows otherwise, terms will be given their "plain, ordinary, and generally accepted meaning."[30] In other words, the court engages in a "common-sense examination of the claims and the forum-selection clause to determine if the clause covers the claims."[31]

---

[27] See *Phoenix Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 615 (Tex. App—Houston [1st Dist.] 2005, no pet.) ("The use of 'shall' generally indicates a mandatory requirement.").

[28] See Mr. Wickline's special appearance and motion to dismiss the Oklahoma lawsuit, at 10, attached as Exhibit 9.

[29] *Young*, 336 S.W.3d at 262 (citing *Sw. Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 324-25 (Tex. App.—Austin 1999, pet. denied)).

[30] See *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 700 (Tex. App.—Dallas 2010, no pet.) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005)).

[31] *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 677 (Tex. 2009).

In this case, the phrase requiring interpretation is "[a]ny action to enforce any of the provisions of this Agreement."[32] For our purposes, it can be broken into two parts: (1) "enforce" and (2) "provisions of this Agreement."

Texas courts commonly turn to dictionaries like Black's Law Dictionary or Merriam-Webster's Collegiate Dictionary when interpreting contractual terms.[33] Merriam-Webster's Collegiate Dictionary defines "enforce" as "to give force to" or "to carry out effectively."[34] In Black's Law Dictionary, it is defined as "to give force or effect to" or "to compel obedience to."[35] "[P]rovisions of this Agreement" is a simple, direct phrase, and a clear reference to the benefits and obligations contained within the Contract. Further, Black's Law Dictionary defines "provision" as "a clause in a statute, contract, or other legal instrument."[36] Combining these definitions, the phrase "enforce any of the provisions of this Agreement" therefore means "to give force or effect to or to carry out the clauses of the Contract."

### 2. All of Mr. Wickline's claims fall within the scope of the Contract's mandatory forum-selection clause.

As stated above, Mr. Wickline has asserted two claims in this lawsuit: (1) a request for declaratory relief against OSU; and (2) tortious interference claims against OSU and Mr. Holder for allegedly interfering with Mr. Wickline's new UT contract. Both of these claims are actions to give force or effect to or to carry out the clauses of the Contract.

---

[32] *See* Ex. 1 (Contract), at ¶ 14.

[33] *See, e.g., RSR Corp.*, 309 S.W.3d at 701 (consulting Webster's Third New International Dictionary and Black's Law Dictionary to interpret the word "hereunder").

[34] MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 413 (11th ed. 2003).

[35] BLACK'S LAW DICTIONARY 569 (8th ed. 2004).

[36] BLACK'S LAW DICTIONARY 1262 (8th ed. 2004).

### a. The declaratory judgment claim falls within the clause.

Mr. Wickline's claim for declaratory relief against OSU—which asks this Court to construe the phrase "Offensive Coordinator (with play calling duties)"—is an action to give force or effect to or carry out a clause of the Contract. As discussed above, the Contract requires Mr. Wickline to pay liquidated damages if he terminates the Contract prematurely, but he is excused from paying such damages if the termination was to accept certain enumerated positions.[37] In other words, the default rule for early termination is the payment of liquidated damages, and excusing payment because Mr. Wickline accepted certain types of employment is the exception. "Offensive Coordinator (with play calling duties)" is one of the positions for which Mr. Wickline could leave OSU without paying liquidated damages, a category that was added by the Contract's second amendment.[38]

The only purpose of Mr. Wickline's claim for declaratory relief in this lawsuit is to enable him to "give force or effect to or to carry out" the Contract's second amendment, which would permit him to avoid paying liquidated damages. Without doubt, Mr. Wickline is seeking this Court's interpretation of the phrase "Offensive Coordinator (with play calling duties)" to enforce the Contract's second amendment. This interpretation is altogether common—Texas courts regularly conclude a request for declaratory relief concerning all or part of a contract falls within a forum-selection clause contained within that contract.[39] Further, Mr. Wickline's suggestion that a declaratory-judgment action is distinct from (and therefore dissimilar to) a breach-of-contract

---

[37] Ex. 1 (Contract), at ¶ 11.

[38] Ex. 1 (Contract), at ¶ 11; Ex. 3 (second amendment to the Contract).

[39] *See, e.g., AIU Ins. Co.,* 148 S.W.3d at 110–11; *In re Tyco Elecs. Power Sys., Inc.,* No. 05-04-01808-CV, 2005 Tex. App. LEXIS 819, at *1–2 (Tex. App.—Dallas Feb. 2, 2005, orig. proceeding).

claim because a declaratory-judgment action is "preventative in nature"[40] is simply wrong: Texas law is very clear that a declaratory-judgment suit may be brought before or after a breach of the contract to be interpreted.[41]

Because Mr. Wickline's request for declaratory relief is an action to give force or effect to the Contract's second amendment, in order to avoid paying OSU liquidated damages under Section 11 of the Contract, it falls within the Contract's mandatory forum-selection clause and should be dismissed.

### b. The tortious interference claims fall within the clause.

It is common for plaintiffs seeking to avoid a contractual forum-selection clause to characterize their claims as torts rather than contract-based actions.[42] This artful-pleading technique has been rejected by the Texas Supreme Court, which has "foresworn slavish adherence to the contract/tort distinction" when determining the applicability of a forum-selection clause.[43] Instead of evaluating whether a forum-selection clause applies to a plaintiff's claim based on the claim's title, Texas trial courts are directed to look beyond such labels and to conduct a "common-sense examination of the substance of the claims made."[44]

First, the Contract's mandatory forum-selection clause applies to the substance of Mr. Wickline's claims that OSU and Mr. Holder tortiously interfered with Mr. Wickline's new

---

[40] *See* Mr. Wickline's response to Defendants' motion to dismiss and motion to stay, at 4, attached as Exhibit 10.

[41] *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 667 (Tex. 2009).

[42] *Barnette v. United Research Co.*, 823 S.W.2d 368, 370 (Tex. App.—Dallas 1991, writ denied) (appellate court rejected plaintiff's argument that noncontractual theories fell outside the forum-selection clause because the claims "ar[o]se out of the contractual relation and implicate the contract's terms"); *Oracle Corp.*, 925 S.W.2d at 72–73, *overruled in part on other grounds by In re AIU Ins. Co.*, 148 S.W.3d 109 (Tex. 2004) (same).

[43] *See Int'l Profit Assocs.*, 274 S.W.3d at 677.

[44] *Int'l Profit Assocs.*, 274 S.W.3d at 677–78.

employment contract with UT.[45] A closer look at allegations underlying the claim reveal Defendants' allegedly tortious conduct actually concerns their attempts to secure Mr. Wickline's compliance with the Contract. What Mr. Wickline characterizes as "harassing and intimidating" behavior in paragraphs 12–16 of his original petition were letters explicitly asking Mr. Wickline to comply with Section 11 of the Contract.[46] (Copies of the letters Mr. Wickline references have been submitted as exhibits 6 and 7 to this brief.) The same allegations are repeated in Mr. Wickline's latest filing, where he again asserts his tortious-interference claims arise from Defendants' letters that sought compliance with the Contract's terms.[47]

Those letters were sent as mandated by the terms of the Contract. In other words, the bases for Mr. Wickline's tort claims are OSU and Mr. Holder's efforts to enforce rights under and comply with the terms of the Contract. Under any common-sense examination of the substance of Mr. Wickline's tortious-interference claims, they concern an effort to give force or effect to or to carry out a clause of the Contract.

Second, decisions in similar cases demonstrate the Contract's mandatory forum-selection clause applies to Mr. Wickline's tortious-interference claims. In *In re Counsel Financial Services, L.L.C.*, the Corpus Christi court of appeals held a forum-selection clause was implicated because a party's defensive claims would not exist but for the contract containing the forum-selection clause.[48] Federal district courts in Texas have explicitly held a forum-selection clause is triggered

---

[45] Orig. pet. at ¶¶ 18–20.

[46] Orig. pet. at ¶¶ 12–16; *see also* Ex. 6 (Holder letter); Ex. 7 (Stephens letter).

[47] Ex. 10 (Mr. Wickline's response to Defendants' motion to dismiss), at 4.

[48] No. 13-12-00151-CV, 2013 Tex. App. LEXIS 9255, at *17–18 (Tex. App.—Corpus Christi July 25, 2013, orig. proceeding).

where—in order to resolve a plaintiff's claims or a defendant's defenses—the court is required to construe the contract containing the forum-selection clause.[49]

That is exactly what will be required here: Defendants have asserted in their responsive pleadings that their allegedly tortious actions (letters to Mr. Wickline seeking liquidated damages under the Contract) were privileged or justified because they were the exercise of Defendants' own contractual rights, because Mr. Wickline did not accept employment as an "Offensive Coordinator (with play calling duties)."[50]  (Under Texas law, a party may assert the affirmative defenses of privilege or justification in response to a tortious interference claim.[51])  Just as in *Counsel Financial Services*, *Giant Eagle*, and *Aerus LLC*, the Contract's forum-selection clause is implicated because this Court will be required to construe the Contract to resolve Defendants' privilege and justification defenses to Mr. Wickline's tortious-interference claims.

Mr. Wickline's attempt to artfully plead around the Contract's forum-selection clause is unavailing.  His tortious-interference claims implicate the clause because (i) the substance of his claims concern enforcement of the provisions of the Contract, and (ii) Defendants' defenses would not exist without the Contract.  Therefore, those claims should be dismissed.

---

[49] *See Excentus Corp. v. Giant Eagle, Inc.*, No. 3:11-CV-3331-B, 2012 U.S. Dist. LEXIS 91250, at *15–16 (N.D. Tex. July 2, 2012); *Aerus LLC v. Pro Team, Inc.*, No. 3:04-CV-1985-M, 2005 U.S. Dist. LEXIS 8559, at *24–25 (N.D. Tex. May 9, 2005).

[50] Mr. Holder's special appearance, motion to dismiss, motion to stay, plea to the jurisdiction, and original answer, at ¶¶ 39–40; OSU's special appearance, motion to dismiss, motion to stay, plea to the jurisdiction, and original answer, at ¶¶ 38–39.

[51] *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 81 (Tex. 2000) ("Generally, justification is established as a matter of law when the acts the plaintiff complains of as tortious interference are merely the defendant's exercise of its own contractual rights.").

- 14 -

3. **Mr. Wickline cannot clearly show the Contract's mandatory forum-selection clause should not be enforced.**

Because Defendants have shown there is a forum-selection clause and Mr. Wickline's claims fall within its scope, the burden now shifts to Mr. Wickline to clearly show: (1) enforcement of the clause would be unreasonable or unjust, (2) the clause is invalid for reasons of fraud or overreaching, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial.[52] The burden of proof is heavy for the party challenging enforcement.[53]

None of the factors listed above supports a failure to enforce the forum-selection clause:

(1) To make enforcement unreasonable or unjust, any inconvenience of litigating in the chosen forum that was foreseeable at the time of contracting must render trial "so gravely difficult and inconvenient that [Mr. Wickline] will for all practical purposes be deprived of his day in court."[54]

(2) In order to invalidate a forum-selection clause, any fraud or overreaching must involve the negotiation of the forum-selection clause itself.[55] Any alleged fraud or overreaching related to other portions of the contract is not sufficient.[56] Mr. Wickline has not alleged, and in all likelihood will not allege, there was fraud or overreaching during negotiation of the forum-selection clause.

(3) Mr. Wickline has not identified any strong Texas public policy that would be contravened by dismissal of this suit so that it can proceed in Payne County Oklahoma, and Defendants are not aware of any.

(4) And finally, simply by entering into the Contract, Mr. Wickline represented to OSU and Mr. Holder that Payne County, Oklahoma, is not so inconvenient that it would deprive him of his day in court.[57]

---

[52] *ADM Inves. Servs.*, 304 S.W.3d at 375.

[53] *ADM Inves. Servs.*, 304 S.W.3d at 375.

[54] *See Fish & Falk, L.L.P. v. Pinkston's Lawnmower & Equip., Inc.*, 317 S.W.3d 523, 529–30 (Tex. App.—Dallas 2010, no pet.).

[55] *Young*, 336 S.W.3d at 266.

[56] *Young*, 336 S.W.3d at 266.

[57] *See Laibe*, 307 S.W.3d at 317.

- 15 -

Because Mr. Wickline has not and cannot meet his "heavy burden" to show the Contract's mandatory forum-selection clause should not be enforced, his claims in this lawsuit should be dismissed.

**4.    Defendant Mike Holder is entitled to invoke the Contract's mandatory forum-selection clause.**

To the extent Mr. Wickline attempts to claim Mr. Holder is not entitled to invoke the Contract's forum-selection clause, this is incorrect. Mr. Holder is a signatory to the Contract and both contractual amendments. An image of the Contract's signature page is below:

and on the same forms as are utilized by the University for other Athletic Department and University employees.

DATED as of the 1st day of January, 2009.

Recommended:

Michael R. Gundy
Head Football Coach

COACH

Gregory Joe Wickline

OKLAHOMA STATE UNIVERSITY

Mike Holder, Vice President for Athletic Programs and Director of Intercollegiate Athletics

By: V. Burns Hargis
President

Further, Mr. Holder's approval through his signature, as director of intercollegiate athletics, was explicitly required by Section 15 before the Contract became effective.[58] Mr. Holder's status as a signatory to the Contract means he may enforce any of its provisions, including the mandatory forum-selection clause.

---

[58] Ex. 1 (Contract), at ¶ 11.

- 16 -

Any suggestion by Mr. Wickline that Mr. Holder may not invoke the forum-selection clause because he is being sued in his individual capacity would also be incorrect. Even if Mr. Holder is considered a non-signatory to the forum-selection clause—which he is not—Texas courts have repeatedly held a non-signatory may enforce the clause against a signatory-plaintiff if the plaintiff's claims assert "substantially interdependent and concerted misconduct by both nonsignatories and one or more signatories."[59] Here, Mr. Wickline alleges in his original petition that "Defendants immediately began harassing and intimidating Coach Wickline with false allegations for the purpose of interfering with his ongoing employment with UT and his UT Contract."[60] Those factual allegations constitute interdependent and concerted misconduct by a signatory (OSU) and an alleged non-signatory (Mr. Holder).

For both of these reasons, Mr. Holder is entitled to enforce the Contract's forum-selection clause with the same force and effect as OSU.

## B.      Comity requires this Court to defer to the first-filed Oklahoma lawsuit.

As discussed above, OSU filed suit against Mr. Wickline in the District Court of Payne County, Oklahoma, on October 17, 2014. This lawsuit was filed three days later, on October 20, 2014. Even if Mr. Wickline's claims are not covered by the Contract's mandatory forum-selection clause—which they are—this lawsuit should be stayed in deference to the first-filed suit in Oklahoma for three reasons: (1) Mr. Wickline himself has admitted the lawsuits concern the same issues; (2) Texas trial courts are "strongly urged" to stay or dismiss second-filed actions; and (3) Texas discourages the use of declaratory relief as a forum-shopping device.

---

[59] *In re Cornerstone Healthcare Holding Grp., Inc.*, 348 S.W.3d 538, 544–45 (Tex. App.—Dallas 2011, no pet.); *see also Phoenix Network Techs.*, 177 S.W.3d at 620 (same).

[60] *See* Orig. pet. at ¶ 12.

Texas courts, as a matter of comity, stay their own proceedings if a suit involving the same subject matter is already pending in another state.[61] In general, the two suits must involve the same cause of action, concern the same subject matter, involve the same issues, and seek the same relief.[62] Though a stay is not automatically available as a matter of right, the Texas trial court in which the second action is filed is "strongly urge[d]" to stay its proceedings.[63]

First, and most importantly, Mr. Wickline himself conceded the lawsuits address the same subject matter. In his initial pleading in the Oklahoma lawsuit, Mr. Wickline made the following statement:[64]

> There are alternatives. One of them may be Travis County, Texas. Coach Wickline has filed a lawsuit against OSU in Travis County, Texas, requesting, among other things, a declaratory judgment concerning the meaning of "play calling duties" in the Employment Contract — the same issues in this case. Travis County is a much more just and proper forum for both Parties to argue their respective cases. The Defendant lives in Austin,

Mr. Wickline's recent denial that the two lawsuits concern the same issues is belied by his own filings.

Second, even if Mr. Wickline has not already conceded the lawsuits concern the same issues—which he has—the parties' pleadings bear that out. The Oklahoma lawsuit is for breach of contract, and was filed by OSU against Mr. Wickline. The Texas lawsuit, filed by Mr. Wickline, seeks the same declaratory relief as the Oklahoma lawsuit's breach-of-contract claim, and also

---

[61] See Crown Leasing Corp. v. Sims, 92 S.W.3d 924, 927 (Tex. App.—Texarkana 2002, no pet.) (citing Space Master Int'l, Inc. v. Porta-Kamp Mfg. Co., 794 S.W.2d 944, 946 (Tex. App.-Houston [1st Dist.] 1990, no writ)).

[62] In re State Farm Mut. Auto. Ins. Co., 192 S.W.3d 897, 901 (Tex. App.—Tyler 2006, orig. proceeding).

[63] State Farm, 192 S.W.3d at 901.

[64] See Ex. 9 (Mr. Wickline's Oklahoma special appearance), at 10.

- 18 -

includes a claim for tortious interference with existing contractual relations against OSU and Mr. Holder. Mr. Wickline attempts to avoid the stay and argue the parties and causes of action in the Oklahoma lawsuit are different than the Texas lawsuit, citing *Ashton Grove L.C. v. Jackson Walker L.L.P.*, a case involving an Oklahoma legal-malpractice suit and a Texas breach-of-contract suit where the Dallas court of appeals affirmed a denial of a motion to stay.[65] In *Ashton Grove*, the court of appeals upheld the denial of a motion to stay, finding the claims asserted and relief sought in each case were dissimilar.[66]

The lack of identity as to parties and claims in this case, however, is not dispositive of Defendants' motion to stay: both suits address the same issue. In *In re State Farm Mutual Automobile Insurance Co.*, the Tyler court of appeals described a test to employ if the similarity of two pending lawsuits is in doubt: can the parties obtain all the relief in the first-filed suit that they would be entitled to obtain in the second suit?[67] Here, there is only one issue in dispute between the parties, it will necessarily be decided in both suits, and it will resolve all claims and defenses asserted by all parties:

> Does Mr. Wickline's current position as an assistant football coach at UT qualify as an "Offensive Coordinator (with play calling duties)" within the meaning of the Contract?

If the answer is yes, Mr. Wickline has not breached the Contract and his tortious interference claims could be litigated. If the answer is no, Mr. Wickline breached the Contract and there was no tortious interference as a matter of law. In either case, all claims and all defenses could and would be settled in the Oklahoma lawsuit, where all parties are indisputably subject to jurisdiction

---

[65] Ex. 10 (Mr. Wickline's response to Defendants' motion to dismiss), at 6 (citing *Ashton Grove L.C. v. Jackson Walker L.L.P.*, 366 S.W.3d 790, 795 (Tex. App.—Dallas 2012, no pet.)).

[66] *Ashton Grove*, 366 S.W.3d at 795.

[67] *State Farm*, 192 S.W.3d at 901.

and venue is proper. This result is distinguishable from the situation presented in *Ashton Grove* because the Texas breach-of-contract case (whether a legal client paid its bills) could be resolved without affecting the merits of the Oklahoma legal-malpractice case.[68]

Third, Texas courts are generally averse to entertaining requests for declaratory relief where, as here, the subject matter of the declaratory judgment action is already pending in another jurisdiction. That's exactly what happened in *In re BP Oil Supply Co.* and *Space Master International, Inc. v. Porta-Kamp Manufacturing Co.*, which upheld the dismissals of Texas declaratory judgment suits because other suits were already pending in foreign jurisdictions regarding the same subject matter.[69]

In support of its ruling, the *Space Master* court noted the Texas Supreme Court has held: "[A]s a general rule, an action for declaratory judgment will not be entertained if there is pending, at the time it is filed, another action or proceeding between the same parties and in which may be adjudicated the issues involved in the declaratory action."[70] The *Space Master* opinion ended with the following guidance:

> Space Master, in the case at bar, conceded that the suit for declaratory judgment involved the same parties and issues as the proceedings pending in the New Jersey state court and in the Massachusetts federal court. Space Master should not be allowed to use declaratory relief as a forum-shopping device.[71]

Just as in *Space Master*, Mr. Wickline is using declaratory relief as a forum-shopping device. Instead of confronting the same subject matter in the first-filed Oklahoma lawsuit—after months

---

[68] *See Ashton Grove*, 366 S.W.3d at 795.

[69] *In re BP Oil Supply Co.*, 317 S.W.3d 915, 921–22 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding); *Space Master*, 794 S.W.2d at 945.

[70] *Space Master*, 794 S.W.2d at 947 (quoting *Tex. Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891 (Tex. 1970)).

[71] *Space Master*, 794 S.W.2d at 948.

- 20 -

of requests and warnings from OSU—he ran to the courthouse in Travis County in an attempt to obtain what would be a competing interpretation of the Contract. In the words of the Houston court of appeals, "[t]he Declaratory Judgment Act was never intended to provide for the piecemeal litigation of lawsuits."[72]

Finally, to the extent Mr. Wickline attempts to minimize the deference due to the first-filed Oklahoma suit because it was filed "merely" three days before this lawsuit, Texas courts have deferred based on much less. In *BP Oil Supply*, the Texas lawsuit was filed less than six hours after a lawsuit in Delaware, and the Texas court's decision to defer was still upheld.[73]

In summary, Mr. Wickline admits the Oklahoma lawsuit and this lawsuit concern the same issues; that alone is sufficient to invoke the doctrine of comity to stay or dismiss this case. Further, under *State Farm*, this lawsuit should be stayed because Mr. Wickline may obtain all the relief he seeks in the Oklahoma lawsuit. And under *BP Oil Supply* and *Space Master*, Texas courts are discouraged from rewarding the type of litigation tactics employed by Mr. Wickline in this lawsuit: blatant forum-shopping through the use of declaratory relief. For all three of these reasons, this lawsuit should be stayed in favor of the first-filed Oklahoma lawsuit.

## IV. CONCLUSION

This case does not belong in this Court. It is one to enforce a contract signed in Oklahoma, executed by Oklahoma residents, performable in Oklahoma, and with the District Court of Payne County, Oklahoma, selected as the exclusive venue for suit as agreed to by the parties. OSU attempted for months to secure Mr. Wickline's cooperation, and only after OSU was forced to file suit did Mr. Wickline file this second lawsuit, a lawsuit he admits has the same issues.

---

[72] *Space Master*, 794 S.W.2d at 948.

[73] *BP Oil Supply*, 317 S.W.3d at 917–18.

For any or all of the reasons enumerated above, OSU and Mr. Holder respectfully request an order: (i) dismissing all of Mr. Wickline's claims in this lawsuit without prejudice based on the Contract's mandatory forum-selection clause; or, in the alternative, (ii) dismissing or staying this lawsuit pending the outcome of the first-filed Oklahoma lawsuit.

Dated: December 17, 2014

Respectfully submitted,

HOWRY BREEN & HERMAN, L.L.P.

_____

Sean E. Breen
State Bar No. 00783715
sbreen@howrybreen.com
Randy Howry
State Bar No. 10121690
rhowry@howrybreen.com
James Hatchitt
State Bar No. 24072478
jhatchitt@howrybreen.com
1900 Pearl Street
Austin, Texas 78705-5408
Tel. (512) 474-7300
Fax (512) 474-8557

*Attorneys for Defendants Board of Regents for the Oklahoma Agricultural and Mechanical Colleges, acting for and on behalf of Oklahoma State University, and James Michael Holder*

100

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was delivered on December 17, 2014, in compliance with Rules 21 and 21a of the Texas Rules of Civil Procedure, to the parties listed and in the manner indicated below:

David J. Beck
dbeck@beckredden.com
BECK REDDEN, LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
Tel. (713) 951-3700
Fax (713) 951-3720

Christopher R. Cowan
ccowan@beckredden.com
Karson K. Thompson
kthompson@beckredden.com
BECK REDDEN, LLP
515 Congress Avenue, Suite 1750
Austin, Texas 78701
Tel. (512) 708-1000
Fax (512) 708-1002

*Attorneys for Plaintiff Gregory Joe Wickline*

✓ Electronic service
☐ In person
☐ Registered mail, return receipt requested
☐ Commercial delivery service
☐ Facsimile
✓ Electronic mail

_____
Sean E. Breen

**T<span>AB</span> D**
December 18, 2014 Hearing Transcript
(RR 1-35)

# REPORTER'S RECORD
## VOLUME 1 OF 1 VOLUME
### TRIAL COURT CAUSE NO. D-1-GN-14-004391
### COURT OF APPEALS NO. 03-15-00077-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/13/2015 9:23:19 AM
JEFFREY D. KYLE
Clerk

GREGORY JOE WICKLINE,              )  IN THE DISTRICT COURT
    Plaintiff,                   )
                                 )
VS.                                )
                                 )
BOARD OF REGENTS FOR THE           )
OKLAHOMA AGRICULTURAL AND          )
MECHANICAL COLLEGES,               )
ACTING FOR AND ON BEHALF           )
OF OKLAHOMA STATE                  )
UNIVERSITY; AND JAMES              )  TRAVIS COUNTY, TEXAS
MICHAEL HOLDER, IN HIS             )
INDIVIDUAL CAPACITY AND            )
IN HIS CAPACITY AS VICE            )
PRESIDENT FOR ATHLETIC             )
PROGRAMS AND DIRECTOR OF           )
INTERCOLLEGIATE ATHLETICS          )
FOR OKLAHOMA STATE                 )
UNIVERSITY,                        )
    Defendants.                  )  98TH JUDICIAL DISTRICT

_____

## MOTION TO DISMISS AND MOTION TO STAY

_____

On the 18th day of December, 2014, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Amy Clark Meachum, Judge Presiding, held in Austin, Travis County, Texas:

Proceedings reported by machine shorthand.

**APPEARANCES**

FOR THE PLAINTIFF:

**DAVID J. BECK**
SBOT NO. 00000070
BECK REDDEN LLP
Suite 4500
1221 McKinney Street
Houston, Texas  77010
Phone:  (713) 951-3700

        - AND -

**KARSON K. THOMPSON**
SBOT NO. 24083966
BECK REDDEN LLP
Suite 1750
515 Congress Avenue
Austin, Texas  78701
Phone:  (512) 708-1000


FOR THE DEFENDANTS:

**SEAN E. BREEN**
SBOT NO. 00783715
**RANDY HOWRY**
SBOT NO. 10121690
**JAMES HATCHITT**
SBOT NO. 24072478
HOWRY BREEN & HERMAN, L.L.P.
1900 Pearl Street
Austin, Texas  78705
Phone:  (512) 474-7300

**<u>INDEX</u>**

**VOLUME 1**

**MOTION TO DISMISS AND MOTION TO STAY**

**<u>Page</u>** **<u>Vol.</u>**

**<u>DECEMBER 18, 2014</u>**

Announcements........................... 5 1

Argument by Mr. Breen................... 6 1

Argument by Mr. Beck................... 22 1

Argument by Mr. Breen.................. 31 1

Taken Under Advisement................. 33 1

Adjournment............................ 35 1

Court Reporter's Certificate........... 36 1

THE COURT: This is GN-14-4391, Wickline vs. Oklahoma State.

Let me go ahead and take the attorney announcements and also who you're representing for the record.

MR. BREEN: Good afternoon, Your Honor. Sean Breen here with Randy Howry and James Hatchitt. We represent the defendants in the case, which we'll refer to as Oklahoma State University and the Athletic Director, Mike Holder.

MR. BECK: May it please the Court, David Beck and Karson Thompson for the plaintiff, Coach Joe Wickline.

THE COURT: All right. We are here on a motion to dismiss and a motion to stay. That's what I have. I haven't had a chance to read any of the pleadings on this case, just because I was calling the unassigned this afternoon, and so I'm cold, is what I'm saying. So tell me first off, who's the movant and what your motions are.

MR. BREEN: Your Honor, the defendants are the movants. We have two very specific motions. They're being made subject to a special appearance that we have filed and subject to a plea in the jurisdiction, which are sort of the bookends on either

side.

These motions are a motion to dismiss because of a mandatory forum selection clause in the contract at issue, and the second motion is an alternative motion to stay or dismiss based on comity, because this is a second filed lawsuit. This lawsuit was filed by Mr. Wickline after a substantially similar or the same lawsuit was filed already in Oklahoma. So those are the two grounds.

THE COURT: Okay. And you are the movant?

MR. BREEN: Yes, I am, Judge.

THE COURT: So please proceed.

**ARGUMENT BY MR. BREEN**

MR. BREEN: Thank you very much. Judge, this second filed lawsuit does not belong here in Austin, in the state of Texas. We're asking the Court here today, based on a mandatory forum selection clause and based on its discretion under principles of comity, to dismiss this case and allow the case that was first filed in Oklahoma to proceed.

This deals with what you probably have seen in the news a lot lately this time of year, which is coaches that decide to change universities and coach football at a different university. Some do it

voluntarily, others do it involuntarily.  This was a voluntary move by the offensive line coach, Mr. Wickline, from Oklahoma State University to a competitor within the Big XII, the University of Texas here in Austin.

Judge, what I've done to help orient you is I -- I have created a timeline of events that I think this -- Judge, that are -- or I will just succinctly walk through with you, which I think help orient and frame then the fairly straightforward analysis on the forum selection clause and then under the motion to stay or dismiss based on comity.

So, Mr. Wickline was coaching the offensive line and the running game coordinator at the University of Florida from 2002 to 2004.  He then moved, Your Honor, and was hired by Oklahoma State University.  They've been sued through the Board of Regents in this case, but shorthand, I'll -- I'll just use that phrase, or OSU, if the Court doesn't mind. And then Mr. Holder is the Athletic Director and one of the vice presidents at the University -- Oklahoma State University.

Mr. Wickline signed his first employment contract with OSU to become the offensive line coach in January of 2005.  That first contract had a term to it.

And pertinent to these issues, Judge, it also had a couple of provisions; one, it had a mutual liquidated-damage provision. Easy to understand. If the University fired him, he got paid a liquidated sum of money. If he quit and went somewhere else, he would have to pay a liquidated sum of money. It's very common in the coaching industry to have that in employment contracts.

It also, Your Honor, had a mandatory forum selection clause that set the District Court of Payne County, Oklahoma, as the situs -- for disputes arising under the contract or involving the contract. That's Paragraph 14. I put a little sticky on it, Judge, in your notebook. It's under Tab 5. It has a sticky.

Paragraph 14 there that says, "Any action to enforce any of the provisions of this agreement shall be filed in the Payne County District Court." That's the pertinent sentence that runs through every single renewal or contract that Mr. Wickline signed with OSU. And, Judge, that was seven of them. Seven times he renewed or signed ratifying that mandatory forum selection clause. You'll note it uses the term shall.

He signed a second contract in January of

2009. It made some provisions, Judge, because the intent of the agreement was, if Mr. Wickline took a job that was a promotion, NFL or a head coach, et cetera, then that would be a -- what the plaintiff refers to as a safe harbor. He wouldn't have to pay back the liquidated-damage clause, because it was intended to just apply to lateral moves, not moves where he was furthering himself up the ladder.

And mind you, Judge, this is a very talented coach. He was extremely successful at Oklahoma State University, and some believe performed miracles here at UT this fall given the decimated line that he had. So there's no disparaging or bad feelings or -- or lack of talent on Mr. Wickline's part. It's just the opposite. That's exactly why these provisions were in the contract is because he is so talented and important.

You'll see in January 2011, Judge, there was another employment contract amendment signed. And this one is also at issue here. It added a -- again, what a phrase the plaintiff uses, a safe harbor phrase that says, If he become the offensive coordinator with play-calling duties, then that's an exception, and he doesn't have to pay back the liquidated-damage clause.

So, again, Judge, if he made a move and

became an offensive coordinator pretty much anywhere with these play-calling duties, he wouldn't have to pay back the money that he had agreed to pay. In January of 2012 --

THE COURT: Hold on one second.

*(Off the record.)*

MR. BREEN: In January of 2012, the seventh time Mr. Wickline signed an employment contract, it increased the liquidated-damage provision if Mr. Wickline left to go to a competitor within the Big XII, such as UT. And, in fact, Judge, that's exactly what happened.

In January of 2014, Mr. Strong became the coach at the University of Texas. Given his previous ties with Mr. Wickline and Mr. Wickline's immense talent, Mr. Wickline then unilaterally and voluntarily terminated his employment with OSU and became a coach here at the University of Texas. He represented that his new position was offensive coordinator, offensive line coach, and that he would have play-calling duties.

That, then, Judge, allegedly put him within the safe harbor so that he didn't have to pay back the money that he'd agreed to under the contract, the mutual liquidated-damage clause.

In March of 2014 it became apparent

through comments in the press, or at least readily apparent to Oklahoma State University, that Mr. Wickline did not have the play-calling duties that had been the intent of the contract to save the liquidated-damage provision. There are a couple of articles that I have included, not for the truth of the matter but just for notice, that indicated to OSU he was not going to be the person calling the plays; instead Mr. Shawn Watson was.

Therefore, Judge, on March 24th, the Athletic Director, Mike Holder, sent a letter to Mr. Wickline. The letter is also included in our packet to you. It's Exhibit D. The letter is called for by the employment contract to give notice to Mr. Wickline that Oklahoma State believes he owes them the liquidated-damage money because he didn't have the play-calling duties. Mr. Holder obviously sent it and signed it on Oklahoma State letterhead, expressly signed as Vice President for Athletic Programs and Director of Intercollegiate Athletics. It's in his official capacity of VP and Athletic Director for Oklahoma State.

That was then followed up by a letter, April 22nd, by the general counsel for Oklahoma State because the contract requires, before a lawsuit can be

filed in the mandatory venue of Oklahoma, you have to give 30 days' notice and participate in good faith negotiations. That was delivered on April of 2014.

Some six months later, with no progress in the negotiations, Oklahoma State filed the suit, and you have a copy of it, Judge. And it's for breach of contract against Mr. Wickline, and it's requesting the liquidated damages that are -- he owes them under the provisions of the contract; the two main ones that we've talked about.

Mr. Wickline answered in that lawsuit and he filed a motion to dismiss, among other different things. But, importantly, Judge, three days later, he also filed this lawsuit here in Texas, in Travis County, against Oklahoma State and the Athletic Director, and we believe it's virtually identical and essentially the same issues, Judge.

He's suing on two things. One, he's asking for declaratory relief under Chapter 37 of the Civil Practice & Remedies Code about a provision in the contract, that's the play-calling duties provision. And then, Judge, he also sued Mr. Holder and the University for tortious interference with his -- his employment contract here at UT. And the basis in the pleadings is, the letters that Oklahoma State

University sent to Mr. Wickline under the contract, the notice letters that you see in your packet. Those are the claims that are made here.

The University, as I pointed out to you, Judge, we filed a special appearance because of lack of jurisdiction. We've also filed on the back-end basically Tort Claims Act defenses under Oklahoma law because Oklahoma law applies.

But there's ample case law in the state of Texas that says, This narrow issue of forum selection or comity can be addressed, because as you know, the losing party would either have the right of appeal or mandamus right away. And it would be potentially dispositive of the whole case here.

Interestingly, I've been informed that Mr. Wickline's motion to dismiss in Oklahoma was denied this morning. There was a hearing in Oklahoma. It was denied, and that case is moving forward on the merits in Oklahoma, as we speak.

Now, Judge, that brings us to the two issues before you, and that is, should the Court dismiss the case based on the forum selection clause, the answer's yes; or alternatively, should be dismissed or stayed based on principles of comity, if it isn't dismissed because of the forum selection clause.

In the first instance, Judge, what I've done is, we set out for you -- and you haven't had a chance to see it -- that even though Oklahoma law applies under the contract, under forum selection analysis, Texas law applies. So all the cases that I cited to you and that Mr. Hatchitt cited to you in the brief, are Texas cases on the issue.

Now, two points, Judge. As you well know, we're seeking to dismiss it, so we have the burden to demonstrate two things; that there's an agreement for an exclusive forum to settle the disputes and the scope of that agreement includes the claims that are made here. All right?

So turning to the first one, as you've seen -- and I don't believe is in dispute in this case -- there's clearly a mandatory forum selection clause in Paragraph 14 of the employment agree -- agreement, and it's there to enforce any of the provisions of this agreement that has to be done in Oklahoma, per the agreement of the parties. It shall means mandatory, and it was agreed to by Mr. Wickline seven times.

There isn't anything I've seen yet that challenges the existence of the agreement. Instead Mr. Wickline has opposed this motion based on the scope

of the agreement. Their claims are that to enforce any of the provisions of the agreement don't apply to the, basically, mirror claims that he has brought in this case, which we believe are really the same issues, Judge.

So that then takes you to what I've put in Tabs 3 and 4 of your notebook, which is the law that applies to the scope of a forum selection clause and how we determine it. And really, Judge, it boils down to a common sense examination of the terms. That's really simply what the Supreme Court has said that we have to do in this instance. So you have to first decide, what does enforce any provisions of the agreement mean? And we believe that a common sense interpretation of that simply means to give force or effect or to carry out the clauses of the contract. It's just that simple. And that makes perfect sense.

So then, Judge, what you do is you look at the two claims they've made, and you decide, okay, do any of those two claims implicate that provision, and if so, they fall within the forum selection clause.

The first one is expressly -- expressly asking the Court to interpret a provision of that Oklahoma State contract. Okay? That clearly -- that dec action, absolutely on its face, calls for the

Court to carry out and interpret what and whether this safe harbor provision will apply. There -- I don't believe there's any question about that whatsoever.

The second issue, Judge, is that the -- the case here has this twist because it -- there was this tortious interference added. Okay. Tortious interference allegedly -- mind you, Coach Wickline hasn't lost his job at UT. He still gets paid. There's -- there really, Judge, when you look at this, is probably very much of a similarity to the type of pleadings sometimes in federal court that you see, a sham pleading with -- with all due respect, to try to get jurisdiction or get around something. That clearly is what this appears to be, yet it doesn't successfully save it from the forum selection clause.

Okay. When you look at common sense examination of the substance of the claims, Judge, here what you're going to have to ask is, what are they suing Oklahoma State and this Athletic Director for? Committing a tort. What tort? Sending letters that are required under the very contract that has the forum selection clause. That implicates the clause. The case law says that implicates the clause.

Secondly, in addition to suing these -- the entities and -- and the person for doing what the

contract requires them to do, it also implicates an affirmative defense that my clients have. My clients have affirmative defenses of justification and privilege because if, in fact, in good faith, they were exercising their rights under the contract, even if there's a disagreement on whether the safe harbor issue applies, then that also implicates the mandatory forum selection clause.

And there's three cases for you, Judge, in your notebook that have that rule, the affirmative defense implicates the contract rule, Tab 5, Tab 6, and Tab 7. It's the *In re Counsel Financial Services*, the *Excentus* and *Aerus* case, which I've highlighted the pertinent language for Your Honor and also provided a copy to counsel. Those cases, we believe, are right on point. If you have an affirmative defense that implicates the contract, and the contract has the forum selection clause, then it makes perfect common sense that you're enabled to get the benefit of the clause, particularly when the individual signed it seven times.

Next, Judge, there would be an exception perhaps in the case if Mr. Wickline could avail himself to any of the four ways to bust a forum selection clause, but he hasn't pled or proved those. And I don't believe has forwarded an argument that somehow

there's an exception that the clause should not be enforced, either through fraud in the inducement, material unfairness, et cetera.

So it really does boil down to the issue of, when you look at the language, you look at the claims pled, the interpretation of the contract there, Judge, does it apply? The last issue is, can Mr. Holder invoke the forum selection clause? He certainly can. He's a signatory to the agreement. He's an actual signatory to it. And even if he wasn't, they've pled an inextricable intertwined nature of a tort here. Therefore, under that case law, he also deserves the benefit of the forum selection clause.

So, Judge, when you look at what the law is, in this instance, the intent of the parties, what Mr. Wickline agreed to, the fact that the suit was filed first in Oklahoma, that it's proceeding, and the nature of the claims he has made here in Texas, even if he tries to artfully plead a tortious interference, it shouldn't succeed. The forum selection clause should be enforced, and this case should be dismissed without prejudice so he can do it up in Oklahoma.

Now, there's an alternative argument, too, Judge. If for some reason you would disagree with that, which we hope doesn't happen, but if you do,

there are cases that say the principles of comity apply here, and the first-filed rule should be applied.

Now, Judge, I concede to you that this is within your discretion. This is a discretionary matter, but there's a lot of urging by the Texas Supreme Court and other pertinent cases that say you really ought to honor the fact that the case was filed first in Oklahoma and defer to that, for really three main reasons.

One, Judge, is, Mr. Wickline himself has conceded in Oklahoma in his pleadings up there that this case in Texas is really the same case. I have a blurb for you that's in your packet, and we put it in the brief as well, where he basically says to the Court up there, Why don't you transfer this down or let it go down to Travis County where the same issues in this case are pending? Okay.

So we believe Mr. Wickline has admitted -- and, of course, he has different counsel in Oklahoma than -- than Mr. Beck, but, nonetheless, I -- I gave you a certified copy of it, and I think that speaks volumes. All right?

Second, they say, Well, Judge, you can't -- you shouldn't stay or dismiss this case based on comity because it's not the same parties or not the

same claims. Well, Judge, what the case law says is, it doesn't have to be a specific identity of parties; otherwise, you could just defeat a first-filed rule by adding a party in like they have, which is really just a sham pleading anyway. Mind you, I haven't seen a single case that says it's a tort, much less even jurisdiction, to send a demand letter that's required under a contract.

So, Judge, we believe the law -- and if you look at the *In re State Farm* case that we have cited for you, I believe it's 11 and in 12, are the two tabs. The law says, Look, ask the question, can the parties obtain all the relief in the first-filed suit that they would be entitled to do down here in Texas? And the answer is yes, they certainly can.

And, third, Judge, Wickline says, Well, I have a dec action pending here. That's different somehow, and I'm using a dec action so it's not the same identity of party or the same identity as claims. Judge, there's two cases, 9 and 10 in your packet, *BP Oil Supply Company* and *Porta-Kamp* that say, you know what, you can't avoid the first-filed rule by filing a dec action in Texas after the case has already been filed in another state. And, in fact, in those cases, it -- the dismissal was either upheld or mandated by

the Court of Appeals.

Now, I also included in the very end of the packet for you, Judge, just as sort of to be instructive, a couple of state cases that have to do with pleas to the -- or a special appearance based on allegations that demand letters were somehow actionable. And in those cases, Judge, not only did they find they weren't torts, but they weren't even enough for sufficient contacts to be a plea -- a plea to the jurisdiction and -- or to sustain a -- overcome a special appearance. So, Judge, we think that you can look behind the pleadings and apply common sense application when it comes to the rules of comity.

Now, the final thing, Judge, that's instructive is, the cause of action against Mr. Holder in -- in his capacity as Athletic Director, is not even actionable under Oklahoma law. And we, again, think you can look to that, as -- when you're looking at the common sense interpretation, Oklahoma law says, under the Tort Claims Act equivalent, that you have to sue -- if you're suing somebody in their capacity as an employee, then that suit is barred. You have to sue the entity, the governmental entity, not the individual. So, again, Judge, that shows here that it shouldn't and can't be a basis to sustain this.

So it's for those reasons we ask for the forum selection clause to be enforced, this to be dismissed, or alternatively, this to be dismissed based on comity.

THE COURT: All right. Thank you.

**ARGUMENT BY MR. BECK**

MR. BECK: May it please the Court, Your Honor. David Beck for plaintiff, Mr. Wickline, respondent to the motion. We're not talking about the merits of this underlying dispute. The Court's been given certain documents. There are other documents that we could give the Court that -- that bear upon the merits of this case. For example, one of the documents not submitted to you is a May 6, 2014 document letter from the representative of Oklahoma State accusing not only my client, but the University of Texas, of giving him a misleading title of offensive coordinator when he was not the offensive coordinator. And I will represent to the Court, his contract expressly says that he is the offensive coordinator at the University of Texas. This letter goes on to say that statements -- they put are assuredly untrue. They talk about contriving job titles and disingenuous comments and so on and so forth.

Coach Wickline is being sued up in

Oklahoma for three times what his annual salary was. His annual salary was $200,000. They're trying to get from him, as liquidated damages, three times that amount. But we're not talking about the merits in the case before Your Honor. We're talking about two very narrow issues.

Counsel is absolutely correct. We are talking about a forum selection provision. That's the sole basis of their request that you somehow transfer this case up to Oklahoma -- at Stillwater where Oklahoma State is located.

Now, this provision, this contract, was drafted by Oklahoma State. They knew exactly what they wanted in this contract. They're the ones that came up with this forum selection provision. And if you look at this forum selection provision, Your Honor, you will see that it is a very narrow provision. It was obviously designed and intended to allow Oklahoma State, when it wanted to enforce its contracts, to sue in its hometown. That is the obvious import of this forum selection provision. But it also specifically talks about any action to enforce the contract.

Coach Wickline is not trying to enforce anything in the suit before Your Honor. In fact, he doesn't think that this liquidation provision is valid,

but the fact of the matter is, that he's not trying to enforce anything. What he's trying to do is essentially two things: One is to ask Your Honor, under the declaratory judgment statute, to tell us what the meaning is of one provision in his contract.

Now, the fact of the matter is -- and I'll get into this in just a moment -- regardless of how you interpret that provision of the contract, that's not going to end this dispute. There will not be an order from you -- and, for example, if you rule in favor of Oklahoma State, you are not going to be entering an order to say, Coach Wickline, write them a check. On the other hand, if you rule in favor of Coach Wickline, that's not going to end the litigation either. So the litigation in -- before Your Honor is doing to continue regardless of what happens up in Oklahoma.

So one of the essential and underlying basis for their claim is that somehow this action up in Oklahoma is going to dispose of everything. And I respectfully disagree with that and will show the Court in just a moment that, under the applicable case law in Texas, that is not correct.

Now, the -- that's essentially what they're arguing in -- in terms of this forum selection

provision. So our provision simply stated is, number one, it doesn't apply by its very terms because it applies only in an effort to enforce the contract. And you can look in vain to the plaintiff's original petition in this case before you, and you will not see any provision or any request for relief that somehow Coach Wickline wants you to enforce anything. It is simply asking for declaratory judgment.

Now, we also have before you a second cause of action, which is a tortious interference claim. Obviously, that is a tort action that is totally separate and apart from the declaratory judgment action. And as I said, even if somehow that Oklahoma case goes forward and even assuming, for the sake of discussion, that Coach Wickline loses up there -- we don't think he will, but assuming that -- that he does, we still have our tortious interference claim because our provision -- our position is that even if you have a valid contract and even if you have, under a tortious interference claim, an arguable defense of justification or privilege, that doesn't mean that you can, with impunity, say anything or do anything you want with respect to the employee and with -- certainly with respect to the employee's employer, which would be, in this case, the University

of Texas.

The Supreme Court of Texas in the *Prudential* case -- and I've given Your Honor a copy of that case.

THE COURT: Yes.

MR. BECK: -- was in -- clearly involved a situation where Pruden- -- the contract at issue was valid. There's no question that Prudential had certain rights with respect to its policies and with respect to its -- with respect to the people it was doing business with. The people that held policies, its policyholders.

But the court goes on to say -- and I'm want to quote this so that I don't misrepresent it in any way. And the Supreme Court of Texas says -- and I quote -- "But that does not mean that Prudential could say or do anything under the guise of exercising a privilege. A party may not exercise an otherwise legitimate privilege by resorting to illegal or tortious means. Thus, if the plaintiff pleads and proves methods of interference that are tortious in themselves, then the issue of privilege or justification never arises," end of quote.

Again, this is not the merits. But we are pointing out that their efforts in our tortious

interference case to inject the contract by way of this justification and privilege defense still doesn't get them where they need to go, because under the applicable law, and specifically the Texas Supreme Court, they still have to account for what they've done. They still have to account for some of these statements that they made publicly. They still have to account for these letters that they have written, not just to my client, but which the University of Texas has become aware of.

And so we intend at the proper time, again subject to rulings that you make, to prove a tortious interference case and to show that -- that Mike Holder and -- and also Oklahoma State University tortiously interfered with Coach Wickline's contract; not his contract with Oklahoma State, but his contract with the University of Texas. That's the contract we're claiming was tortiously interfered with.

So that is our position with respect to the very narrow issue of whether or not this forum selection provision, which is limited to enforcing the OSU contract, somehow justifies Your Honor in dismissing our case entirely on the basis that it gets transferred to Oklahoma.

Let me turn very briefly to their comity

argument. On their motion to stay, they're basically arguing that the case in Oklahoma was first filed. And they're right. This case was filed three days later. This case would have been filed whether or not they filed that case a week, two weeks, or whatever, because there's a difference in facts and -- and a different basis for our cause of action.

So when you look at the basis of their motion to stay, we have to look at the applicable law. And -- and -- for example, in the *State Farm* case, which is a Tyler Court of Appeals case, 2006, it clearly sets forth what the general rule is, Your Honor. And it says, To obtain a stay of the second filed action -- which is the one before you -- the movant has the obligation to show that both suits, number one, involve the same cause of action; number two, involve the same subject matter; number three, involve the same issues; and number four, involve the same parties.

Well, we would submit, as a matter of law, that is not correct. We've got different causes of action because Oklahoma -- Oklahoma State is arguing breach of contract up there. Down in here we're talking about a declaratory judgment action under our statute and a tortious interference claim.

So you don't have the same causes of action. You don't have the same subject matter because the causes of action are different. You don't have the same issues because the causes of action are different. And you don't even have the same parties in this case because Mr. Holder is not a party up in Oklahoma. He is a party down here, for reasons that we've asserted in our -- in our petition.

And the relief requested is different. In Oklahoma, they're requesting that -- that -- that Coach Wickline pay three times what his contract for Oklahoma State called for; whereas down here, we're -- we're basically suing for damages solely on the basis, at this time, of this tortious interference claim. And then we're asking for declaratory judgment. So regardless of what happens up there, Your Honor is still going to have this case down here.

So -- now, in the DJ action, as I've said, even if that case goes forward up there, this case will not be over, for the reasons that I've talked about, and specifically the *Prudential* case. So at some point we're going to have to -- to fight over what they've done and how they did it.

A person may or may not have a -- an arguable legal right, Your Honor, but that doesn't mean

you can assert it any way you want. Your Honor may be familiar with a lot of these collection agency cases where somebody has a contract with some store. They haven't paid their bill. The collection agency goes after the person. But that doesn't mean that they can do some of the things that some of them have been accused of and -- and supposedly did. You -- it's the way you do things that are just as important as whether you have an underlying arguable basis for what you do.

So, again, you've got two narrow issues. One is what we've asserted, an action to enforce the Oklahoma State contract, and we say it is not, for the reasons I've already explained and is in our papers.

And then the second reason is that the -- the tortious interference claim and the motion to stay, again, is a very narrow request, because if you go through the elements of what's required, they can't meet that burden.

So, Your Honor, we would respectfully request that both of these cases ought to go forward in their normal course because it doesn't matter which one comes to judgment first. The other one is going to continue.

So for those reasons -- oh, one other thing I'd like to mention, Your Honor. We got -- and

I'm not fussing with anybody, I want to make it clear. We got a 22-page brief with some exhibits yesterday, and I would like a reasonable opportunity to respond. And I can do that very quickly. And with that, Your Honor, that concludes our comments.

THE COURT: You'd have the final word.

### ARGUMENT BY MR. BREEN

MR. BREEN: Thank you, Judge. Brief. Yes, final. A couple of things, Judge. First, it's been raised that somehow there's a materiality to the fact that he's being sued for three times his annual salary, something he agreed to in the contract. I will point out that most honorable collegiate institutions usually pay the buyouts of their coaches when they hire them. And I don't know why that didn't occur here, but it's not material to the forum selection clause. The fact of what he owes and why he agreed to it isn't material at all.

Next, we're not asking the Court to transfer the case as was stated. We're asking for the case to be dismissed. Mr. Wickline could make these claims in Oklahoma where he agreed to make them and where his lawsuit -- and where the lawsuit against him is proceeding. So that's just incorrect.

THE COURT: I don't know that I could

transfer a case.

MR. BREEN: I don't -- you can't, Judge.

THE COURT: All right.

MR. BREEN: You can't at all. But he certainly could make these claims in Oklahoma. Of course, he's going to have to do it pursuant to the applicable laws up there.

There was an argument made under the forum -- forum selection clause that we're arguing that the Oklahoma case will dispose of everything under the forum selection clause. That's not correct. I'm not making that argument. What I'm making the argument of, and which wasn't addressed at all by counsel in this case, is -- but what is proved unequivocally by his *Prudential* case is, *Prudential* says that an affirmative defense to tortious interference is, you had a contractual right to do it.

Well, guess what, Judge, if the contract provides the basis for an affirmative defense, I've given you three cases that say, that means it's within the forum selection clause. That's Tab 5, 6, and 7. It's not addressed in any way because they're right on point, and *Prudential* shows you, if the contract is at issue in the affirmative defense, there's where it goes, is to the forum selection clause.

And then, Judge, as to the comity, they say this is a different case. I'd just ask Your Honor to look at Mr. Wickline's pleadings. That's not what he told the Oklahoma court. He told them the truth. It's essentially the same case.

You can try to disguise it. You can try to plead around it. But at the end of the day, Judge, the fact that they assert, Well, we would have filed this anyway, is belied by the fact that they had a copy of the prospective lawsuit for six months. They didn't file any lawsuit. They didn't file this one until three days after they were sued -- he was sued in Oklahoma. And it's clear why.

For some reason he doesn't believe he can get a fair trial in the venue that he selected and lived in for all those years. That's what they expressly told the Judge. That's what they are essentially telling you here. And that's not a basis to not enforce the principles of comity. So, Judge, for those reasons, we'd ask for you to dismiss this case.

**TAKEN UNDER ADVISEMENT**

THE COURT: Okay. Well, I am going to take it under advisement. If you -- let's see. You want a chance to read what was filed yesterday, it

sounds like --

MR. BECK:  Right.

THE COURT:  -- and an opportunity to respond?  Is Monday...

MR. BECK:  We can do it by Monday, Your Honor.

THE COURT:  Okay.

MR. BECK:  Close of business?

THE COURT:  Yes, close of business on Monday.

MR. BECK:  Yes, we can.

THE COURT:  And is there any -- am I under any deadline?  Am I under -- because I probably would not -- since that's coming on Monday, my guess is I wouldn't get something out to you until after the first of the year, but I -- but I want to make sure I'm not under any deadline.

MR. BREEN:  No, Judge, you're not under any deadline.

MR. BECK:  And I agree with that.

THE COURT:  Okay.  Thank you.

MR. BREEN:  Although our Christmas wish list is quite large.

THE COURT:  Duly noted.

MR. BECK:  No Christmas Eve orders,

please.

THE COURT:  All right.  Then we can go off the record at this time.

*(Court adjourned.)*

# TAB E
**Plaintiff's First Amended Original Petition
(CR 187-94)**

CAUSE NO. D-1-GN-14-004391

| | | |
|---|---|---|
| GREGORY JOE WICKLINE, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| THE BOARD OF REGENTS FOR THE | § | |
| OKLAHOMA AGRICULTURAL AND | § | |
| MECHANICAL COLLEGES, acting for and on | § | TRAVIS COUNTY, TEXAS |
| behalf of Oklahoma State University, and JAMES | § | |
| MICHAEL HOLDER, in his individual capacity | § | |
| and in his capacity as Vice President for Athletic | § | |
| Programs and Director of Intercollegiate Athletics | § | |
| for Oklahoma State University | § | |
| | § | |
| Defendants, | § | 98TH JUDICIAL DISTRICT |
| | § | |

## PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW **Gregory Joe Wickline** ("Coach Wickline") and hereby files this First Amended Original Petition against **The Board of Regents for the Oklahoma Agricultural and Mechanical Colleges, acting for and on behalf of Oklahoma State University** ("OSU") and **James Michael Holder** ("Holder") (collectively, the "Defendants"), and would show the Honorable Court the following:

### I. DISCOVERY LEVEL

1.      Discovery in this case is intended to be conducted according to a Level III discovery control plan under Rule 190.4 of the Texas Rules of Civil Procedure.

### II. THE PARTIES

2.      Plaintiff Wickline is an individual residing in Travis County, Texas.

3.      Upon information and belief, Defendant OSU is a public educational institution organized under the constitution and laws of the State of Oklahoma, which conducts business in the State of Texas, but does not maintain a resident agent for service of process in the State of

187

Texas. Pursuant to Section 17.044 of the Texas Civil Practice & Remedies Code, OSU may be served with process as follows:

Oklahoma State University
c/o Office of the Secretary of State
Statutory Documents Section - Citations Unit
P.O. Box 12079
Austin, Texas 78711-2079

The Secretary of State is requested to forward the citation to Defendant Oklahoma State University, attention General Counsel Steve Stephens, at its principal place of business:

Oklahoma State University
c/o Steve Stephens, General Counsel
5th Floor – Student Union
Stillwater, OK 74078-7044

4.      Upon information and belief, Defendant Holder is an individual residing in Oklahoma and the Vice President for Athletic Programs and Director of Intercollegiate Athletics for OSU, who conducts business in the State of Texas, but does not maintain a resident agent for service of process in the State of Texas. Pursuant to Section 17.044 of the Texas Civil Practice & Remedies Code, Holder may be served with process as follows:

Mike Holder
c/o Office of the Secretary of State
Statutory Documents Section - Citations Unit
P.O. Box 12079
Austin, Texas 78711-2079

The Secretary of State is requested to forward the citation to Defendant Holder at his principal place of business:

Mike Holder
202 Athletics Center
Oklahoma State University
Stillwater, OK 74078

2

## III. JURISDICTION AND VENUE

5.     This Court has personal jurisdiction over OSU, which purposefully availed itself of the privileges and benefits of conducting business in Texas. Defendants' wrongful acts that form the basis of Coach Wickline's claims in this petition occurred in Travis County, Texas.

6.     The damages sought in this cause of action are within the minimum jurisdictional limits of this Court.

7.     Venue is proper in Travis County, Texas, because all or substantially all of the events giving rise to Coach Wickline's claims occurred in Travis County. TEX. CIV. PRAC. & REM. CODE § 15.002(1). In the unlikely event Section 15.002(1) is not applicable, venue is proper in Travis County because Coach Wickline resides in Travis County and did so at the time of the accrual of his causes of action against Defendants.

## IV. FACTS

8.     On or around January 2014, Coach Wickline was offered and accepted the position of Offensive Coordinator for the University of Texas at Austin's ("UT") football team. UT is an NCAA Division I-A institution. He and UT entered into an employment contract shortly thereafter (the "UT Contract").

9.     As the Offensive Coordinator, part of Coach Wickline's duties is to call plays for UT's offense. Prior to accepting his position at UT, he was the Offensive Line Coach for OSU's football team.

10.     However, Coach Wickline's employment contract with OSU provides that OSU will release Coach Wickline from the OSU Contract and any liability for liquidated damages, or otherwise, if Coach Wickline is offered and accepts a position as the "Offensive Coordinator (with play calling duties) at another NCAA Division I-A institution." UT is such an institution

3

and Coach Wickline continues to be UT's Offensive Coordinator and continues to have "play calling duties."

11. Defendants, however, had no intention of letting their star Offensive Line Coach go to UT. Indeed, shortly before UT offered Coach Wickline the Offensive Coordinator position, Defendant Holder told Coach Wickline that he would never release him from the OSU Contract because he was "the best offensive line coach in the country."

12. Despite knowing that OSU was required to release Coach Wickline from the OSU Contract and any obligation to pay liquidated or other damages, Defendants immediately began harassing and intimidating Coach Wickline with false allegations for the purpose of interfering with his ongoing employment with UT and his UT Contract.

13. On March 24, 2014, Holder sent a letter to Coach Wickline's UT office demanding that he immediately pay $593,478 in liquidated damages to OSU—an amount that exceeds Coach Wickline's current yearly salary as UT's Offensive Coordinator. In that letter, Holder falsely claimed that Coach Wickline was not hired as UT's Offensive Coordinator and did not have "play calling duties."

14. Less than a month later, OSU sent another letter to Coach Wickline's UT office—this time attaching a draft lawsuit petition against Coach Wickline for the same amount plus interest, attorney's fees, and costs.

15. In response, Coach Wickline explained to OSU what it already knew: he was hired by UT as the Offensive Coordinator and that he, in fact, did have play calling duties.

16. On May 6, 2014, OSU sent yet another letter to Coach Wickline's UT office. OSU not only claimed that Coach Wickline was lying about his position and duties at UT, but also alleged that UT was "attempting to aid" Coach Wickline in "avoiding the terms" of the OSU Contract by providing Coach Wickline with the "misleading title of Offensive Coordinator."

4

17. On information and belief, OSU has filed a lawsuit in Oklahoma against Coach Wickline for liquidated and other damages. The lawsuit is baseless and its sole purpose is to interfere with Coach Wickline's ongoing employment relationship with UT and the UT Contract.

## V. CAUSES OF ACTION

### TORTIOUS INTERFERENCE WITH AN EXISTING CONTRACT

### AGAINST BOTH DEFENDANTS

18. Coach Wickline restates and incorporates the allegations set forth in Paragraphs 1–16 as set forth fully herein.

19. As described above, through their campaign of harrassment, threats, and intimidation, Defendants have willfully and intentionally interfered with Coach Wickline's valid employment contract with UT.

20. As a direct and proximate cause of Defendants' tortious interference, Coach Wickline has suffered injury and mental anguish. At this time, Coach Wickline seeks damages in excess of $100,000 but not more than $200,000. *See* Tex. R. Civ. P. 47(c)(3).

### DECLARATORY JUDGMENT ACTION AGAINST OSU

21. Coach Wickline restates and incorporates the allegations set forth in Paragraphs 1–20 as set forth fully herein.

22. OSU contends the contractual phrase "Offensive Coordinator (with play calling duties)" means something other than the plain and ordinary meaning of those words. According to Coach Wickline's contract with UT, he is UT's Offensive Coordinator and he has play calling duties. Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, Coach Wickline requests a declaratory judgment construing this phrase according to its plain and ordinary meaning, consistent with the parties' intent, and declaring the rights and obligations of the parties accordingly.

5

23.     Coach Wickline also requests an award of reasonable and necessary attorney's fees and costs, pursuant to Texas Civil Practice & Remedies Code § 37.009.

## VI. JURY DEMAND

24.     Pursuant to Rules 216 of the Texas Rules of Civil Procedure, Coach Wickline hereby requests a jury trial and tenders its fee in support of that request. Coach Wickline requests that this cause be placed on the Court's Jury Docket.

## VII. PRAYER

25.     WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for Coach Wickline against Defendants for damages in a reasonable amount within the jurisdictional limits of the Court, and declaring the parties' rights and obligations under the OSU Contract, together with pre-judgment interest (from the date of the injury through the date of judgment, at the maximum rate allowed by law), post-judgment interest at the legal rate, attorney's fees, costs of court, and such other and further relief to which Coach Wickline may be entitled at law or in equity.

Respectfully submitted,

BECK REDDEN, LLP

By:     /s/ David J. Beck
   David J. Beck
   State Bar No. 00000070
   1221 McKinney Street, Suite 4500
   Houston, Texas 77010
   Tel: 713-951-3700
   Fax: 713-951-3720
   Email: dbeck@beckredden.com
          ggannaway@beckredden.com

   Christopher R. Cowan
   State Bar No. 24084975

6

515 Congress Avenue, Suite 1750
Austin, Texas 78701
Tel: 512-708-1000
Fax: 512-708-1002
Email: ccowan@beckredden.com

Karson K. Thompson
State Bar No. 24083966
515 Congress Avenue, Suite 1750
Austin, Texas 78701
Tel: 512-708-1000
Fax: 512-708-1002
Email: kthompson@beckredden.com

**ATTORNEYS FOR PLAINTIFF
GREGORY JOE WICKLINE**

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on December 23, 2014 on the following counsel of record by email:

HOWRY, BREEN & HERMAN, L.L.P.
Sean E. Breen
1900 Pearl Street
Austin, Texas 78705-5408
Email: sbreen@howrybreen.com

**COUNSEL OF RECORD FOR DEFENDANTS**

/s/ David J. Beck
David J. Beck

8

194